## FRANK P. COVER vs. WILLIAM MYERS.

*Fraud in the Inception of Promissory note—Burden of Proof—Invalidity of Negotiable paper Originally fraudulent—Rights of Innocent holder—Rights of Persons claiming under such Innocent holder, with Notice of the Original illegality—Exceptions to the General rule in such Cases—Evidence—Instructions to the Jury—Separate ' guarantee of Negotiable instrument.*

Where fraud is shown in the inception of a promissory note, it is incumbent upon the holder to show under what circumstances. he acquired title to it.

Where a negotiable instrument is originally infected with fraud, invalidity, or illegality, the title of the orginal holder being destroyed, the title of every subsequent holder which reposes on that foundation, and no other, falls with it. But if any subsequent holder takes the instrument in good faith and for value, before maturity, he is entitled to recover on it, and so any person taking title under him may recover, notwithstanding such latter holder may have knowledge of the infirmities of the instrument; and all that is required of the holder in such case is that it be proved that he or some preceding holder or indorsee under whom he claims, acquired title to the paper before maturity *bona fide*, and for value.

Whenever negotiable paper has passed into the hands of a party unaffected by previous infirmities, its character as an available security is established, and its holder can transfer it to others with the like immunity.

The only exceptions to this doctrine are those where the paper is absolutely void, as when issued by parties having no authority to contract, or its circulation is forbidden by law, from the illegality of its consideration, as when made upon a gambling or usurious. transaction.

Knowledge of the fraudulent origin of a promissory note may be shown to have been possessed by the parties either by direct proof or by facts and circumstances that fairly lead to that con-

clusion; and circumstances that are not of any great probative force of themselves, are admissible in evidence as circumstances to be considered in connection with other proof, reflecting upon questions of knowledge and good faith.

Prayers on the part of the plaintiff, each segregating a certain fact or circumstance, and asking the Court to declare that such fact or circumstance was not legally sufficient to authorize the jury to find against the proof of the plaintiff, and that the jury should not be at liberty to consider such fact or circumstance to defeat the right of the plaintiff to recover, are properly refused.

There is no error in rejecting a prayer which though unobjectionable in principle, is covered and embraced in previous prayers offered by the same party which were granted.

The indorser of a note drawn payable to bearer, incurs the same liabilities and obligations as the indorser of a negotiable note, payable to order.

Where the holder of a note payable to bearer, at the time of its transfer to him exacted and took from the indorser a guarantee of indemnity, this does not deprive the holder of the right to occupy the position of indorsee of the note. The motive and purposes to be accomplished by such a transaction form a question solely for the jury.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

The first *five exceptions* are sufficiently referred to in the opinion of the Court.

*Sixth Exception.*—At the trial the plaintiff offered the twelve following prayers:

1. That on the pleadings and all the evidence as follows : If the jury believe from all the evidence that the defendant executed the promissory note given in evidence, as the same purports, and delivered the same to P. Huddle, the payee therein, or to any other person to be delivered to said Huddle, and the same was so delivered, and that before the maturity thereof the same was trans-

ferred and delivered by said Huddle to William B. Thomas, and also before the maturity thereof the plaintiff bought said promissory note from said William B. Thomas in good faith and for a valuable consideration, and paid to said Thomas the amount of the principal sum in said note mentioned, and also of the interest thereon, calculated up to the 21st day of June, 1888, less a discount of five and one-half per cent. from the amount of said principal and interest so calculated, and that said promissory note was, at the time of said purchase, transferred and delivered by said Thomas to the plaintiff, and that the plaintiff at the time of said purchase, transfer and delivery, had no notice or knowledge that said note had been obtained from the defendant by means of any fraud practiced on him or without consideration, then the plaintiff is entitled to a verdict for the amount of said note and interest from the eleventh day of July, 1887.

2. If the jury find from the evidence that the plaintiff purchased the note in question for a valuable consideration before its maturity, and that he purchased said note without knowledge that the same had been obtained by fraud or without consideration, then the jury must find that the plaintiff is a *bona fide* holder of said note for value, and merely suspicious circumstances sufficient to put a prudent man on inquiry or even gross negligence on the part of the plaintiff at the time of the purchase and delivery of said note, are not sufficient of themselves to prevent a recovery by the plaintiff, unless the jury find from the evidence that in taking said note the plaintiff acted in bad faith.

3. If the jury believe the testimony given by Frank P. Cover, witness, and shall further believe that before and at the time of the purchase by the plaintiff of said notes, as proved by said Cover, the said William B. Thomas was a banker and broker, doing business as such

in Westminster, Maryland, and that plaintiff resides in
the State of Virginia, at the distance of about one hun-
dred and forty miles by railway from said Westminster,
and that said Thomas took said note, with other prom-
issory notes, as stated by said Cover, to the residence of
said plaintiff in said State of Virginia, for the purpose
of endeavoring to sell the same to plaintiff as proved by
him, then the fact or circumstance of said Thomas tak-
ing said note, with the said other notes, from Westmins-
ter, Maryland, to said residence of said plaintiff, Cover,
for the purpose of selling the same to said plaintiff, and
the fact or circumstance of selling said note to plaintiff
in Virginia, is not legally sufficient to authorize the jury
to find that the plaintiff did not by said purchase and
sale, become the *bona fide* holder and bearer of said note,
and the jury are not at liberty to consider said facts and
circumstances as tending to defeat the plaintiff's right
to recover in this suit.

4. If the jury believe the testimony given by Frank
P. Cover, the plaintiff, as a witness, and shall believe
that at the time of the purchase by plaintiff of said note,
as proved by him, the said William B. Thomas was a
banker and broker, carrying on business as such in
Westminster, Maryland, and that plaintiff resided in
the State of Virginia at a distance of about one hundred
and forty miles by railway from said Westminster, and
that the usual time occupied in passing by railway from
said Westminster to said residence of the plaintiff in
Virginia was between four and five hours, or thereabout;
and further, that said plaintiff was engaged in carrying
on the business of tanning leather at his said residence
in Virginia, and that said Thomas took the note in suit,
together with other promissory notes, as proved by the
plaintiff, if the jury so find, from his said place of busi-
ness in said Westminster to the said residence of the
plaintiff in Virginia, for the purpose of selling the same

to the plaintiff, and that he did sell the same as proved by said plaintiff, if the jury so find, then the fact or circumstance of the plaintiff having been engaged in said business of tanning leather in Virginia, is not sufficient to authorize the jury to find that the plaintiff did not, by said purchase and sale become the *bona fide* holder and bearer of said note, and the jury is not at liberty to consider said fact or circumstance as tending to defeat the right of plaintiff to recover in this suit.

5. If the jury believe the testimony given by the plaintiff as a witness, and shall believe that at the time of the transaction of the sale and purchase of said promissory notes, as proved by him, the said William B. Thomas was a banker and broker, carrying on business as such in Westminster, Maryland, and that plaintiff resided in the State of Virginia, at a distance of about one hundred and forty miles by railway from said Westminster, and that the time occupied in passing by railway from said Westminster to said residence of said Cover in Virginia, was between four and five hours or thereabout, and that the makers of said promissory notes were residents of the State of Maryland, and that at or about the time of said transaction or sale and purchase of said notes, as the same is proved by plaintiff, if the jury believe the same, the said Thomas executed and delivered to plaintiff the paper or agreement signed by said Thomas and bearing date 19th June, 1888, as given in evidence, then the fact or circumstance of the execution and delivery of said paper or agreement is not legally sufficient to authorize the jury to find that the plaintiff did not, by said purchase, become the *bona fide* holder and bearer of said notes, and of the note in suit as one thereof, and the jury is not at liberty to consider said fact or circumstance to defeat the plaintiff's right to a verdict.

6. If the jury believe the testimony given by the plaintiff, as a witness, to be true, and shall further be-

lieve each and every of the facts and circumstances enumerated in the foregoing third, fourth and fifth prayers, then all said facts and circumstances taken and considered together, are not legally sufficient to rebut the said testimony of said witness, the plaintiff, and cannot be considered by the jury to defeat the right of the plaintiff to a verdict.

7. That the jury, are not at liberty, in making up their verdict to consider the language employed by defendant in his fourth prayer, to wit: "His usual course of business," as meaning the usual course of plaintiff's particular business.

8. That the jury, are not at liberty, in making up their verdict, to take into consideration any notice or knowledge which William B. Thomas may have had of the fraudulent character of the note sued on, and given in evidence at the time he endorsed and delivered the same to the plaintiff.

9. That the jury, cannot impute to the plaintiff bad faith in the purchase and acceptance of the note offered in evidence, even though they may believe from the evidence that said Thomas, at the time of the endorsement and delivery of said note to the plaintiff, had notice of the fraud practised upon the defendant by P. Huddle or his agents.

10. That if the jury find from the evidence that the plaintiff purchased the note sued on and given in evidence, for a valuable consideration, before its maturity, and that he purchased the same without knowledge that the same had been obtained by fraud, or was without consideration, then the jury must find that the plaintiff is a *bona fide* holder of said note for value.

11. That there is no legally sufficient evidence, in the cause from which the jury can find that William B. Thomas, at the time he indorsed and delivered to the plaintiff the note sued on and given in evidence, had

knowledge of the fraudulent manner by which said note had been obtained from the defendant, or that the same was without consideration, and the jury are not at liberty to consider the same in making up their verdict.

12. That if the jury shall find from the evidence the execution and delivery to the plaintiff of the agreement of the 19th of June, 1888, offered in evidence, that they are not at liberty to consider the same as evidence legally sufficient, from which they can find that the plaintiff at the time he purchased the note given in evidence had knowledge of the fraudulent character of said note.

The defendant offered six prayers, the first of which was rejected and is therefore omitted. The others are as follows :

2. If the jury believe from the evidence that the note in suit was sold and transferred to the plaintiff by William B. Thomas, as testified to in the evidence, under an agreement of the same date as said sale and transfer with said Thomas as to this and other notes so sold and transferred at the same time, that if there were any costs in collecting the notes so sold, or if the plaintiff failed to collect said notes, that the said Thomas would pay all of said costs incurred in any suit on said notes, and would further refund to said plaintiff the amount of said notes after the said plaintiff had made an effort and failed to collect said notes, as evidenced by the paper-writing dated the 19th day of June, 1888, offered in evidence, then the jury are to weigh this as a circumstance in determining whether the plaintiff purchased the note in suit in good faith.

3. If the jury believe from the evidence that the note sued on was obtained from the defendant by fraud, then the verdict must be for the defendant, unless they further find that said note was obtained by the plaintiff without knowledge of said fraud at the time he purchased

said note; and the plaintiff must show such want of knowledge on his part by preponderating proof.

4. If the jury believe from the evidence that the purchase by the plaintiff of the said note sued on was not in the due course of his business, such purchase by him of said note is a fact to be considered by them, with all facts and circumstances in the case in determining the matter of the plaintiff's knowledge or bad faith at the time he purchased said note.

5. That the jury are at liberty to consider all the facts and circumstances given in evidence in this case, in determining whether or not the plaintiff at the time he purchased the note sued on acted in good faith in purchasing said note.

6. If the jury believe from the evidence, that the note sued on was obtained from the defendant by P. Huddle, or his agents representing the Carroll County Industrial, Grain and Seed Co., and that part of the consideration of said note was the bond to the defendant offered in evidence, and that the agreement evidenced by the said bond was not complied with, then the burden of proof is upon the plaintiff to show that he had no knowledge of the consideration of defendant's note at or before the time he purchased said note.

And the plaintiff filed the following exceptions to defendant's prayers:

The plaintiff excepts to the defendant's fifth prayer, for that there is no legally sufficient evidence in the cause of any facts and circumstances from which the jury are at liberty to find that the plaintiff did not act in good faith in purchasing the note in question at the time he purchased the same.

The plaintiff excepts to defendant's sixth prayer, for that there is no legally sufficient evidence in this case from which the jury are at liberty to find that the plaintiff had knowledge of the consideration of the defendant's

note in suit, at or before the time he purchased the same; provided the jury believe the evidence of the plaintiff.

The plaintiff excepts to defendant's third prayer because there is no legally sufficient evidence in this case from which the jury is at liberty to find that plaintiff had knowledge that the said note in suit had been obtained by fraud from the defendant.

And the plaintiff excepts to defendant's first prayer, and assigns for exception that there is no legally sufficient evidence from which the jury can find that William B. Thomas had knowledge that the note in question had been obtained by P. Huddle by fraud at the time he became holder thereof.

The Court (JONES, J.) overruled the exceptions of the plaintiff to the defendant's prayers, and granted the plaintiff's first and second prayers, and modified his eighth prayer, as follows :

That any notice or knowledge which William B. Thomas may have had of the fraudulent character of the note sued on and given in evidence, at the time he endorsed and delivered the same to the plaintiff, does not in law of itself disentitle the plaintiff to recover.

And granted said eighth prayer as so modified by the Court, and rejected the other prayers of the plaintiff; and granted the second, third, fourth, fifth and sixth prayers of the defendant.

The plaintiff excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, FOWLER, MCSHERRY, and BRISCOE, J.

*William H. Thomas*, and *William P. Maulsby*, for the appellant.

*Harry M. Clabaugh*, (with whom were *D. N. Henning* and *William A. McKellip*, on the brief,) for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is an action brought by the appellant against the appellee to recover the amount of a promissory note, dated the 11th of July, 1887, for $150. The note was made payable on the first day of August, 1888, to P. Huddle, *or bearer*, at the First National Bank of Westminster. The note bears the indorsement on its back, in blank, of William B. Thomas; though the date of the indorsement does not appear; nor is it shown under what circumstances or for what consideration the note was passed or transferred from Huddle to Thomas.

It appears that the note was given for the price of fifteen bushels of seed wheat, which the defendant was induced to agree to purchase of "The Carroll County Industrial, Grain and Seed Company," of which P. Huddle was president. At the time of taking the note, the agent acting for the company, represented to the defendant that if he, the defendant, would buy fifteen bushels of Barnhouse's wheat, he, the agent, would sell for the defendant double the quantity the latter bought, at $10 a bushel, with $2.50 a bushel off, as commission, in time to pay off the note; and at the time of such agreement and the making of the note, the agent delivered to the defendant the following bond:

"No. 3.          Pleasant Valley, July 11th, 1887.

"The Carroll County Industrial, Grain and Seed Co., incorporated under the laws of Maryland, P. Huddle, president, C. J. Stewart, secretary, Wm. A. Wampler, treasurer, doth hereby agree to sell 30 bushels of Seneca Chief Wheat for Mr. William Myers, of Jno., of Uniontown Dis., Carroll County, State of Md., at ten dollars per bushel in good notes, less $2.50 per bushel commission, on or before the first day of July, 1888. We make no monetary statements, and the person accepting this

bond acknowledges to have purchased the grain at a speculative value.

```
******
*SEAL*
******
```
P. HUDDLE, President.

The defendant was assured by the agent that the note would not have to be paid until the bond was redeemed. That some time afterwards the defendant received fifteen bushels of wheat, but which was of an ordinary kind; that the defendant never afterwards saw the agent or the parties he represented; and there was no offer or attempt whatever to sell any portion of the product of the wheat for which the note was given, as was obligated to be done by the bond.

It further appears in evidence that William B. Thomas, the indorser on the note sued on, was, at the time of such indorsement, a broker and dealer in notes and other paper, in the town of Westminster, in Carroll County, and that he was a man of reputed wealth. That on the 19th of June, 1888, he left home, taking with him fifty-six promissory notes of various makers, including the note sued on in this case; but whether all the notes were made to the same payee the record does not disclose, except by implication or inference; and which notes in the aggregate amounted to $8,400, including interest to the 21st of June, 1888; and with said notes he went to the house of the plaintiff, near Front Royal, in the State of Virginia, a distance of about 140 miles from Westminster; and then and there, upon agreement, he indorsed and transferred all the fifty-six notes to the plaintiff, for the sum of $7,907.98, at a discount of five and a half per cent. on the $8,400. All the notes were near maturity, but none were in fact overdue; and a day or two after this transfer of the notes, the plaintiff transmitted them to the Union

National Bank of Westminster for collection; and upon
default of payment being made when due, he directed
that the notes should be placed in the hands of an attor-
ney at Westminster for suit, including the note sued on
in this case.   In this Bank, Thomas, the indorser, kept
his account, and to the credit of which were deposited
the money and checks which he received of the plaintiff
on the transfer of the notes.   The plaintiff's principal
business is that of conducting or carrying on a tannery at
his home in Virginia, and running a grocery store in con-
nection therewith; and he says he occasionally buys notes
and speculates in Virginia lands.   The notes indorsed to
him by Thomas were all made by Maryland people, and
only some of such makers were known to the plaintiff; and
it may be inferred from the fact that all the notes were
sent to a Westminster bank for collection, that the
makers were mostly, if not all, residents of that vicinity.

The principal testimony in the case, as disclosed by the
record, was given by the plaintiff himself.   He testified to
what may seem somewhat remarkable, that Thomas did
not state anything about the consideration of the notes,
or how they were obtained, and that he, the plaintiff,
had no knowledge on the subject, and made no inquiry
as to the consideration upon which they were founded,
or how they were obtained; that he had no knowledge
at that time of any fraud in obtaining the notes, and
had never before heard of P. Huddle, or of any business
that he was engaged in; but he bought the notes solely
because he had the money to spare from his business of
tanning, and wished to invest the same, and thought
that the interest to accrue on the notes and the discount
of $5\frac{1}{2}$ per cent. would be a good profit on his money.
He paid Thomas for the notes by a check on the Bank of
Warren, in Virginia, and which check was duly paid in
money and checks or drafts.

At the time of the transfer of these notes by Thomas to the plaintiff, and as part of the same transaction, Thomas, on request of the plaintiff, executed and delivered to the latter the following agreement or guarantee:

"Browntown, Va., June 19th, 1888.

"I agree that, provided there be any costs in collecting any of the foregoing fifty-six notes, I will refund any and all amount of costs to the said F. P. Cover; also agree that provided any of said notes should fail to be paid to said F. P. Cover, or order, when due, that I will refund him said amt. of money which may be due him on any such notes, with all costs which may be upon same, after he having made an effort to collect same from the makers and fails.

Wm. B. Thomas."

The record does not show that either Huddle, the payee of the note, or his agent who obtained it from the defendant, or Thomas, who indorsed the note to the plaintiff, appeared as witnesses; but the case of the plaintiff was mainly rested upon the ordinary presumptions that obtain in favor of the rights of innocent holders of negotiable paper acquired before maturity. But in this case there is an element introduced by the proof that modifies, to a certain extent, those ordinary presumptions. That the note had a fraudulent inception is clear beyond doubt; and upon this being shown, it was incumbent upon the plaintiff to show under what circumstances he acquired title to the note. That the note would have been fully embraced by the Act of 1888, ch. 415, passed for the purpose of preventing, and also for punishing such frauds, but for the fact that the note antedates the statute, is clear. The case falls fully within the principles of the case of *Griffith vs. Shipley*, 74 *Md.*, 591. It is a well settled doctrine, applicable to these cases, that where a negotiable instrument is originally infected with fraud, invalidity, or illegality, the title of the original holder

being destroyed, the title of every subsequent holder
which reposes on that foundation, *and no other*, falls
with it.    But if any subsequent holder takes the instru-
ment in good faith and for value, before maturity, he is
entitled to recover on it, and so any person taking title
under him may recover, notwithstanding such latter
holder may have knowledge of the infirmities of the in-
strument; and all that is required of the holder in such
case is, that it be proved that he, or some preceding holder
or indorsee under whom he claims, acquired title to the
paper before maturity, *bona fide* and for value.    *Commis-
sioners, &c. vs. Clark*, 94 *U. S.*, 278, 285: *Collins vs. Gil-
bert, Id.*, 753.

Therefore, if Thomas, under whom the plaintiff asserts
title to the note, was in fact a *bona fide* purchaser or
holder of the note for value, then the plaintiff, notwith-
standing any knowledge that he may have had at the
time of the endorsement to him, of the fraudulent origin
of the note, would be entitled to recover by virtue of the
right acquired from Thomas.    In such case the plaintiff
would succeed to all the rights of Thomas, and would be
entitled to enforce them.    For the rule is now well set-
tled, as laid down by the Supreme Court of the United
States in *Cromwell vs. County of Sac*, 96 *U. S.*, 51, 59,
"that whenever negotiable paper has passed into the
hands of a party unaffected by previous infirmities, its
character as an available security is established, and its
holder can transfer it to others with the like immunity.
His own title and right would be impaired if any restric-
tions were placed upon his power of disposition.    This
doctrine, as well as the one which protects the purchaser
without notice, says Judge STORY, 'is indispensable to
the security and circulation of negotiable instruments,
and it is founded on the most comprehensive and liberal
principles of public policy.'    *Sto. Prom. Notes, sec.* 191.
The only exceptions to this doctrine are those where the

paper is absolutely void, as when issued by parties having no authority to contract; or its circulation is forbidden by law from the illegality of its consideration, as when made upon a gambling or usurious transaction.'' The same doctrine has been very fully adopted by the former Court of Appeals of this State in the case of *Boyd vs. McCann*, 10 *Md.*, 118.

It was therefore incumbent upon the plaintiff, to entitle him to recover, to prove either that he became *bona fide* purchaser of the note for value before maturity, or that he purchased the note from Thomas, and that the latter had acquired title to the note *bona fide* and for value, before maturity, and that it was as successor to the right and title of Thomas that he sought to recover. If, however, Thomas was but an agent of Huddle to get off the paper, the note being payable to bearer, the title of Thomas would be no better than that of his principal, and his title to the note would be infected with the fraud of the origin of the note. *Solomons vs. Bank of England*, 13 *East*, 135. But whether Thomas was agent or not, if both he and the plaintiff had knowledge of the infirmities or fraudulent origin of the note at the time they respectively became holders thereof; or if they colluded together for the purpose of avoiding the effect of such knowledge, and of placing a colorable title in the plaintiff, to enable him to sue for the recovery of the note, then, clearly, there can be no recovery by the plaintiff. And such knowledge of the fraudulent origin of the note may be shown to have been possessed by the parties either by direct proof, or by facts and circumstances that fairly lead to that conclusion.

Keeping these principles in view, there is no difficulty in disposing of the several questions raised by the exceptions taken by the plaintiff. Some of the exceptions were taken to the admissibility of evidence, and others to the refusal to grant prayers offered by the plaintiff,

Cover vs. Myers.

and to the granting of several instructions on the request of the defendant.

The circumstances offered and relied on, as stated in the first five bills of exception, we think were properly admitted. They were not of any great probative force of themselves, it is true, but as circumstances to be considered in connection with other proof, reflecting upon questions of knowledge and good faith, they were admissible, and we perceive no error in the rulings in these exceptions.

There was certainly no error committed by the Court below in rejecting the third, fourth, and fifth prayers offered by the plaintiff. Those prayers each segregated a certain fact or circumstance, and asked the Court to declare that such fact or circumstance, was not legally sufficient to authorize the jury to find against the proof of the plaintiff; and that the jury should not be at liberty to consider such fact or circumstance to defeat the right of the plaintiff to recover. This mode of dealing with separate pieces or items of evidence, segregated from all the other evidence of the case, is wholly unwarranted, and has no support in any principle of reason. The strongest case or defence, proved by a combination of facts, might be overcome and destroyed by that method of dealing with the separate facts or items of proof. And for like reason that the prayers just mentioned were rejected, the Court was right in rejecting the sixth and twelfth prayers of the plaintiff. The seventh and eighth prayers, as presented, were calculated to mislead the jury, and therefore properly refused.

By the ninth prayer of the plaintiff the Court was asked to instruct the jury, that they could not impute to the plaintiff bad faith in the purchase of the note sued on, even though they might believe from the evidence that Thomas, at the time of the transfer of the note to the plaintiff, had notice of the fraud practised upon the de-

fendant by Huddle or his agent. And by the eleventh prayer the Court was asked to instruct that there was no legally sufficient evidence in the cause, from which the jury could find that Thomas, at the time he endorsed the note to the plaintiff, had knowledge of the fraudulent manner by which said note had been obtained from the defendant, or that the same was without consideration. And further, by special exceptions to the defendant's prayers for instruction, the plaintiff resisted the granting thereof, because, as alleged, there was no legally sufficient evidence in the cause from which the jury were at liberty to find that the plaintiff had knowlege, at the time he purchased the note, that the same had been obtained by fraud from the defendant.

These propositions taken together, required the Court to instruct the jury that there was no evidence legally sufficient upon which it could be found that either Thomas or the plaintiff had knowledge of the fraudulent origin of the note at the time it was taken by them respectively, and therefore the verdict should be for the plaintiff. But such an instruction would have been wholly unwarranted, and the Court therefore was clearly right in refusing it. There was evidence legally sufficient to be considered by the jury, of knowledge of the fraudulent origin of the note, on the part of both Thomas and the plaintiff; and the Court could not do otherwise than allow it to be considered by the jury. As the case will have to be re-tried, we shall refrain from comment upon the facts and circumstances of the case; but portions of such evidence are referred to in the prayers of the defendant, granted by the Court.

The tenth prayer offered by the plaintiff would seem to be unobjectionable in principle; but there was no error in rejecting it by the Court. It had been fully embraced and covered by the plaintiff's first and second prayers, which had been granted by the Court. The

repetition of the same proposition, though in different phraseology, would have answered no useful purpose, and could only have served to incumber the case and embarrass the jury.

We perceive no error in any of the prayers of the defendant granted by the Court, except the third and the sixth. In these two, just mentioned, we think there was substantial error. By the third prayer the jury were instructed, that if they believed from the evidence the note sued on had been obtained from the defendant by fraud, *then the verdict must be for the defendant,* unless they should further find that the note had been obtained by the plaintiff without knowledge of such fraud at the time he purchased the note ; and that it was incumbent upon the plaintiff to show such want of knowledge on his part by preponderating proof.

This instruction entirely ignored the right of the plaintiff to stand upon and assert the rights of Thomas, the indorser, to whose rights the plaintiff succeeded, in the event that the jury might find that Thomas was an innocent and *bona fide* holder of the note. The instruction, by the terms in which it was granted, cut off and entirely precluded the plaintiff from any possible right resulting from the good faith of Thomas, if the jury should find such to have existed in his acquiring title to the note. In this we think there was error. And so in regard to the sixth prayer, the plaintiff was confined to the *bona fides* of his own conduct in acquiring title to the note, without any reference to or dependence upon what may have been a good and *bona fide* title acquired by Thomas, to which the plaintiff succeeded by indorsement.

It is contended, however, by the defendant, that the plaintiff is not entitled to occupy the position of indorsee of the note ; that at the time of the transfer of this and other notes to the plaintiff the latter exacted and took

from Thomas a guarantee of indemnity, and that it was upon that and not the indorsement that he relied in taking the notes and paying the money to Thomas. And in support of this contention the defendant cites and relies on the case of *Trust Co. vs. National Bank*, 101 *U. S.*, 68. But that case is quite unlike the present. There the note was not indorsed to the Trust Company, and it was not, therefore, taken in the usual course of business by that mode of transfer in which negotiable paper is usually transferred. The payment of the note was merely guaranteed, and the Court held that not to be in effect equivalent to an indorsement. Here, though the note was payable to Huddle or bearer, it was indorsed by Thomas to the plaintiff, and in such case, the indorser incurs the same liabilities and obligations as the indorser of a negotiable note, payable to order. *Sto. Prom. Notes, sec.* 132. And while it is difficult to perceive why the individual guaranty of Thomas should have been taken, when he had indorsed the notes in a manner to secure to the plaintiff all the liability of a commercial indorsement of the paper, yet the motive, and purposes to be accomplished by such transaction, form a question, in a case circumstanced like the present, solely for the jury.

It follows, from the foregoing review of the case, that for the errors in the third and sixth instructions granted for the defendant, the judgment must be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 15th March, 1892.)