JONES COUNTY TRUST & SAVINGS BANK, Appellee, v. PETER J. KURT, Appellant.

**BILLS AND NOTES:** Negotiability and Transfer—"I Assign" as Indorsement. A writing on the back of a negotiable promissory note, in the form of, "I *assign* the within note to A—— B——," and duly signed by the payee, constitutes a special "indorsement," within the meaning of the Negotiable Instruments Act,—that is, an indorsement which specifies the person to whom or to whose order the note is payable. In other words, such an indorsement is equivalent to the ordinary indorsement of, "Pay to A—— B——."

**BILLS AND NOTES:** Negotiability and Transfer—Nullification of Effect of Indorsement. The legal effect of a proper and regular indorsement of a negotiable promissory note is not changed or avoided by inserting in such indorsement:
    1. A guaranty of payment; or
    2. A consent to any extension of time or renewal; or
    3. A waiver of demand, notice, and protest.

**BILLS AND NOTES:** Negotiability and Transfer—Construction of Pleading—Legal Effect. The legal effect of the facts pleaded determines whether the transferee of a negotiable promissory note took by "assignment" only, or by "indorsement."

**PLEADING:** Redundant Matter. An amendment which seeks to lay a foundation for the reception of evidence otherwise admissible under the general issue is properly stricken.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

APRIL 7, 1921.

REHEARING DENIED DECEMBER 15, 1921.

ACTION to recover on two promissory notes. Defense: That the notes were obtained by fraud, and that the plaintiff is not a bona-fide holder in good faith. Opinion states the facts. Judgment for the plaintiff. Defendant appeals.—*Affirmed.*

*Charles R. Sutherland* and *Doxsee & Doxsee,* for appellant.

*J. J. Locher* and *Crissman & Linville,* for appellee.

PER CURIAM.—The following was prepared by the late Justice F. R. Gaynor, and is now adopted and ordered published as the opinion of the court.

This action is brought on two promissory notes, executed and delivered by the defendant to the Iowa Mercantile Company.

1. BILLS AND NOTES: negotiability and transfer: "I assign" as indorsement.

Both, it is claimed, were transferred to the plaintiff before maturity, and for a valuable consideration. The plaintiff is the holder and owner of these notes. The title passed by delivery, and is evidenced by written assignments on the back of the notes.

The defendant admits that the Iowa Mercantile Company is a corporation, and admits the execution of the notes, but pleads defensively:

(1) That they were obtained from him by the Iowa Mercantile Company by means of fraud and misrepresentation, and without consideration (specifying the fraud used by the said Mercantile Company to secure the same). That the notes were obtained through fraud practiced by the Mercantile Company upon the defendant, and for that reason were not enforcible in the hands of the Mercantile Company, and were without consideration, is practically conceded by the plaintiff, and if not conceded, the evidence abundantly establishes that fact. So it appears that they were not enforcible in the hands of the original payee.

(2) That the plaintiff is not a bona-fide holder for value before maturity; that it took an unauthorized assignment of the notes when it knew, or should have known, of their fraudulent inception. This presents a fact question, and was for the jury. The jury resolved it against defendant's contention.

(3)   That the notes were nonnegotiable at the time they were *assigned* to the plaintiff.   Defendant denies, also, that they were ever *indorsed* to the plaintiff in the manner required by either the statutes of the state or the law merchant.

This contention involves the legal construction to be given to the words used in making the transfer, as they appear upon the back of the note as hereinafter set out.   Defendant's real claim is, therefore, that he has the same defenses against the notes that he would be entitled to make against the Mercantile Company.

We will not take up the questions in the order in which they are presented, but will consider first the contention that the notes were *assigned*; that the transfer is pleaded as an assignment, and nowhere pleaded as an indorsement; that consequently the plaintiff takes as assignee, and, therefore, subject to all defenses which might be urged against the notes in the hands of plaintiff's assignor.   On this the defendant rests a claim that the court erred in instructing the jury that the plaintiff took them as an innocent purchaser, unless it had notice of infirmities in the inception of the notes before or at the time of purchase. This assignment of error calls in question the sufficiency of the indorsement on the back of the notes to bring the purchaser within the protection of the statute and the law merchant, giving to purchasers of negotiable paper, when purchased in the usual course of business before maturity for a valuable consideration, immunity from defenses held by the maker against the payee.   Defendant's claim, concretely stated, is that the form of indorsement appearing on the back of the notes characterizes the transfer as an assignment only, and as such, leaves the notes subject to all defenses which might be urged against them in the hands of the original payee; and this whether the plaintiff had notice of these defenses at the time it took them or not,—thus placing the plaintiff in the same position as a purchaser of a nonnegotiable instrument.

We have no question as to the correctness of defendant's position that a mere assignee of a chose in action acquires no greater rights than his assignor had at the time of the assignment, and that he takes subject to the rules that govern the transfer of nonnegotiable paper.   But the question still remains:

Is the character of the indorsement such as the law merchant recognizes as sufficient to give the protection that purchasers of negotiable instruments are entitled to, when it is shown that they are bona-fide purchasers for value before maturity? On the back of each of the notes appeared the following:

"For value received I do hereby *assign* the within note to the Jones County Trust & Savings Bank, Monticello, Iowa, and guarantee the payment of same when due or at any time thereafter and consent to any extension of time or renewal waiving demand, notice, and protest. (Signed) Iowa Mercantile Company, by Tom R. Wilder, President."

The first contention of the defendant is that, by reason of the form of the indorsement, it served only to pass whatever right, title, and interest the payee had in the notes; and that the contract implied from indorsement did not arise; and that, therefore, the notes in the hands of plaintiff are subject to all defenses which might be urged against them in the hands of the Mercantile Company. The question then presented is: Does this writing over this signature of the Iowa Mercantile Company, in which it says, "For value received I do hereby *assign* the within note to the Jones County Trust & Savings Bank," negative the idea of that conditional liability which the law imports from the act of indorsement? The notes themselves were, in form, negotiable. They were in fact negotiable. Indorsement is a necessary part of the process of negotiation, under the statute and the law merchant, to give immunity to the transferee. That is the protection given to negotiable instruments payable to order or bearer, and is only available to the innocent purchaser when they are transferred to him by indorsement made according to the law merchant; and the indorsement, to be effectual, to pass title, and to give protection, must be made according to the law merchant. As said before, the notes were negotiable. The only question raised by the defendant is that they were not *negotiated* according to the law merchant, and that, not being so negotiated, the plaintiff took them subject to all equities and defenses held by the maker against the payee, existing at the time of the transfer. The rule is that negotiable paper, having the quality of negotiability, is privileged, and may be transferred in such manner as to give the transferee a

better right than was possessed by the party making the transfer, and places the transferee in a better position than that occupied by the party making the transfer. The rule governing negotiable paper is that the new title acquired by the transferee, if innocent and regular, and made according to the law merchant, will be protected against prior equities. To have this effect, and to place the transferee in a better position than the transferor was in, the transfer must be in accord with the rules which give the protection to the transferee: that is, the title must be passed in the way that the law merchant recognizes as effectual, to give immunity to the transferee. If the transferor pursues the style and method allowed by the common law in the case of transfer of chattels, the transferee acquires no greater right, even though the paper be negotiable, than he would if the paper were nonnegotiable; and the rights of the transferee so acquired will be subject to all defenses which might be urged against it in the hands of the transferor. So it follows that, according to the law merchant, the transfer must be made by indorsement, and indorsement may be made by simply signing the name of the payee on the note, and delivering the same to the transferee. Negotiation by indorsement is complete by the signing of the name of the payee on the back of the note, followed by delivery. The contract implied by the act is, in effect, that the indorser will pay the note, if not paid by the maker at maturity, upon demand and notice. The signature of the payee, indorsed on the paper, imports two things: (1) An executed contract of assignment, with its implication; and (2) an executory contract of conditional liability, with its implications. The first implication is that the rights of the payee are transferred to the person to whom the note is delivered. The second implication is that the payee will discharge the obligation called for in the note, if not discharged by the maker, upon demand and notice of nonpayment. It follows, therefore, that the name written on the back of the note serves two purposes: (1) To transfer all the right, title, and interest, on delivery, to the person to whom delivered; and (2) to create a contractual liability on the part of the indorser to pay the note on demand and notice, if not paid by the maker. The use of the word "assign" adds nothing to the legal effect of the signing of the name of the payee on the

back of the note, followed by delivery. The use of the word "assign" simply more fully expresses that which would follow the act of indorsement and delivery. The signing of the name of the payee on the back of the note also carries with it the contract of personal liability above referred to. The use of the word "assign," therefore, adds nothing to the indorsement. But the question is suggested: Does the use of the word "assign" over the signature of the payee negative a contract which, by implication of law, would arise, had the signature been there without the word "assign" above it? Does it negative the idea of that conditional liability which the law imports when the simple indorsement is used, without the word "assign?" Or, in other words, does the language used in this assignment negative the implication of the legal liability of the transferor as an indorser? If it does not, then he is an indorser, under the law merchant. See *Adams v. Blethen,* 66 Me. 19 (22 Am. Rep. 547). In that case, the note in question was negotiable, and the payee signed his name on the back of it, under these words:

"I this day sold and delivered to Catharine M. Adams [plaintiff] the within note."

The court said:

"We think that the defendant thereby assumed all the liabilities of an ordinary indorsement of the note. No word in the writing indorsed upon the note negatives or qualifies such an idea. The liabilities implied by indorsing a note can be qualified or restricted only by express terms. Here, the only restriction is that the indorsement be made special to Catharine M. Adams. The defendant declares that he sold and delivered the note. Every indorser of a bill or note impliedly says the same thing by his indorsement. The defendant did sell and deliver the note, and by making that declaration over his name on the back of it, he also agreed to pay the note to the plaintiff according to its tenor, upon seasonable notice, if the maker did not pay it. His contract is in part expressed and part implied. Any indorser of a note may be properly styled a seller of the note by him indorsed."

At common law, an assignee could not maintain in his own name an action on the thing assigned. He had to bring it in the name of the assignor, and subject to all defenses which the de-

fendant had against his assignor.  Our statute, however, permits assignees to bring actions in their own names; but their rights are subject to any defenses or offsets existing in favor of the party charged, against the assignor, which come into existence before notice of the assignment.  A marked difference between an assignment at common law and an indorsement is that by an assignment the assignor passed his title to the plaintiff, but did not subject himself to any contractual liability.  He passed the title subject to any defenses which might be urged against him. While an indorsement, though also passing title, creates a contractual duty on the part of the indorser.  Though the note is of negotiable character, yet the law merchant requires that the transfer be made in such a way as to create a contractual liability on the part of the transferor, in order to give to the transferee the protection guaranteed by commercial law.  The immunity from equities and defenses was, no doubt, originally founded upon the thought that the contract implied in the indorsement gave assurance that the instrument was genuine, and that there were no defenses or equities against it; that this method of transferring title gave assurance to the purchaser that the thing purchased was a genuine and an enforcible contract.  We need not pursue the reasons for the rule, although it has its foundation in reason, but look to the authorities in support of what we have said.

In *Markey v. Corey,* 108 Mich. 184 (36 L. R. A. 117), the action was upon promissory notes.  On the back of the notes, for the purpose of transferring the same, appeared the following indorsement:

"I hereby assign the within note to Matthew M. Markey and Catherine Sundars."

The writing was challenged as insufficient to create an indorsement, under the law merchant.  It was insisted that whatever title the plaintiff took was as assignee, and not as indorsee. The court said:

"The usual mode of transfer of a promissory note is by simply writing the indorser's name upon the back, or by writing also over it the direction to pay the indorsee named, or order, or to him or bearer.  An indorsement, however, may be

made in more enlarged terms, and the indorser be held liable as such."

In *Sands v. Wood*, 1 Iowa 263, the transferor was held to be an indorser, under the following form of transfer indorsed on the back of the note:

"I assign the within note to Mrs. Sarah Coffin, October 31, 1851. [Signed] A. D. Wood."

"For value received, I assign the within note, 12th November, 1851. [Signed] Sarah Coffin."

It was there said that the contract which the law merchant implies was created by the writing, and parol evidence was not competent to vary its terms. See, also, *Sears v. Lantz & Bates*, 47 Iowa 658. This was an action upon a promissory note. It was indorsed in the following words:

"December 18, 1876. I hereby assign all my right and title to Louis Meckley. [Signed] John Bowman."

The court said:

"Without doubt, it amounts to an assignment of all the defendant's right and title in the note. Does this subject him to the liabilities of an indorser, is the question for determination."

The court held that, as the indorsement placed no limit upon the liability of the assignor, he must be held to be an indorser, and said:

"It must be regarded as settled in this state that the *assignment of a promissory note by the payee thereof*, in writing on the note, vests the legal title therein in the assignee, so as to enable him to bring an action in his own name against the maker. Such being true an assignment amounts to an indorsement, and makes the assignor liable as an indorser, within the rule laid down by Parsons [in 2 Parsons on Bills & Notes 1]."

Coming now to our statutes, we have the following: Section 3060-a30 of the Supplement to the Code, 1913, reads as follows:

"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. * * * if payable to order, it is negotiated by the indorsement of the holder, completed by delivery."

Section 3060-a31 reads:

"The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words, is a sufficient indorsement."

Section 3060-a33 reads:

"An indorsement may be either in blank or special; and it may also be either restrictive or qualified, or conditional."

Section 3060-a34 reads:

"A special indorsement specifies the person to whom or to whose order the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument. An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery."

Section 3060-a36 provides:

"An indorsement is restrictive which either:

"1. Prohibits the further negotiation of the instrument; or

"2. Constitutes the indorsee the agent of the indorser; or

"3. Vests the title in the indorsee in trust for or to the use of some other person. But the mere absence of words implying power to negotiate does not make an indorsement restrictive."

Section 3060-a37 reads:

"A restrictive indorsement confers upon the indorsee the right:

"1. To receive payment of the instrument.

"2. To bring any action thereon that the indorser could bring.

"3. To transfer his rights as such indorsee, where the form of the indorsement authorizes him to do so.

"But all subsequent indorsees acquire only the title of the first indorsee under the restrictive indorsement."

Section 3060-a38 reads:

"A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse' or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument."

Section 3060-a47 provides:

"An instrument negotiable in its origin continues to be

negotiable until it has been restrictively indorsed or discharged by payment or otherwise.''

It is next contended that the notes were not negotiated according to the law merchant because the indorser guaranteed the payment of the same when due, and consented to any extension of time or renewal, waiving demand, notice, and protest.

2. BILLS AND NOTES: negotiability and transfer: nullification of effect of indorsement.

It will be noted from what we have heretofore said that, by the act of indorsement and delivery, the indorser agrees to pay the note on maturity, if not paid by the maker, upon receiving due notice of its dishonor. The guaranty on these notes does not detract from the legal effect of the implied obligation, nor give less assurance of the genuineness of the instrument. In view of our statute hereinbefore set out, which provides that ''an instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed,'' and in view of the statute (Section 3060-a37) defining what constitutes restrictive indorsement, we cannot do otherwise than hold that the plaintiff took these notes free of any equities or defenses that might be urged against them in the hands of the Mercantile Company of which it had no actual notice at the time of the transfer.

In *Maine Tr. & B. Co. v. Butler*, 45 Minn. 506 (12 L. R. A. 370), the Minnesota court held that, if writing out upon the back of the paper accomplished just what would have been inferred from the signature alone, the indorser had incurred no greater liability than he would, had he simply placed his signature there; and it could not be said that he had done less, in the absence of the clear declaration of an intent to exempt himself from the contractual obligation. In *Lenhart v. Ramey*, 3 Ohio Cir. Ct. 135, it was held that an indorsement in the form of an assignment as follows, ''I assign all my interest,'' etc., makes the party not a mere assignor, but an indorser, liable after demand and notice.

The same was held in *Kilpatrick v. Heaton*, 3 Brev. (S. C.) 92; *Smith v. Brooks*, 65 Ga. 356. See, also, *Vanzant v. Arnold*, 31 Ga. 210, where it was held that an indorsement by the payee on the back of a note, assigning the notes and guaranteeing payment of the same, renders the assignor liable as an indorser. In

*Cravens v. Hopson,* 4 Bibb (Ky.) 286, the transfer was made in the following words:

"We do hereby transfer this note to H., * * * and if Arthur should not be good, we stand good for him."

*Held*: Subjected the transferor to no more liability than a mere indorser.

In *Elgin City Banking Co. v. Zelch,* 57 Minn. 487 (59 N. W. 544), the sufficiency of the indorsement to bring the holder within the protection of the commercial law as an indorsee was called in question. The indorsement was in the following language:

"Pay the Elgin City Banking Company.  D. Dunham.  Payment guaranteed.  D. Dunham."

The court said:

"Whether these indorsements be construed as constituting a single contract, or two distinct and separate contracts, we are clear that they constitute an 'indorsement,' in the commercial sense, and that the transferee is an 'indorsee,' and entitled to protection as such, under the law merchant. The fact that Dunham enlarged his responsibility beyond that of 'indorser,' by guarantying payment, did not change or affect the character of his indorsement."

See the same question discussed in *Elgin City Banking Co. v. Hall,* 119 Tenn. 548 (108 S. W. 1068). In this case, the indorsement was in the following language:

"For value received, we hereby guarantee the payment of the within note at maturity, or at any time thereafter, with interest at five and one-half per cent per annum until paid, and we agree to pay all costs and expenses paid or incurred in collecting the same, hereby waiving demand of payment and notice of nonpayment."

The court said:

"It is conceded that many of the authorities hold that a mere guaranty of a note will constitute the purchaser an indorsee, within the rule protecting an innocent holder; but it is insisted that this rule cannot apply to a guaranty changing the rate of interest and also agreeing to pay expenses of collection. It is argued that, if this can be done without destroying the negotiability of the paper, then each indorsee can, of course, change

the rate of interest or the amount of the note, and each be liable for a different amount. It is unnecessary to decide this question, since it appears that the notes were indorsed in blank by W. S., J. B., & B. Dunham, and the guaranty did not, of course, nullify their prior blank indorsement.''

The court cites with apparent approval what was said in *Elgin City Banking Co. v. Zelch,* supra, and also *Cover v. Myers,* 75 Md. 406 (23 Atl. 850, 32 Am. St. 394); *Louisville Trust Co. v. Louisville, N. A. & C. R. Co.,* 75 Fed. 433 (22 C. C. A. 378). See, also, *Toler v. Sanders,* 77 W. Va. 398 (87 S. E. 462).

When words are used on the back of the instrument, expressing an intent to negotiate, followed by the signature of the payee, the negotiation, under the law merchant and the statute, becomes complete upon delivery. The law then implies a contract to pay upon demand, and notice of nonpayment. The one to whom the note is transferred with such indorsement on the back stands protected against any equities existing between the original parties. The intent to negotiate may be evidenced by any words expressive of such intent, as ''transfer,'' ''assign,'' or ''pay over to the party named.'' The fact that the payee assumes other distinct obligations to the transferee does not negative the implication arising from the use of the words indicating an intent to negotiate, followed by the act of negotiation. The Oklahoma case is distinguished in this: that there were no words of negotiation; no words expressing an intent to negotiate. All that appeared upon the back of the note was the guaranty, and the note was delivered without words expressing an intent to negotiate. See *Ireland v. Floyd,* 42 Okla. 609. We are, however, not without authority in our own state upon this proposition. In the case of *Muscatine Nat. Bank v. Smalley,* 30 Iowa 564, there appeared upon the back of the note these words:

''Pay to the order of Jos. Richardson; demand and notice waived, and payment guaranteed by me. [Signed by the payee named in the note.]''

The defense interposed was that the suit rested upon a guaranty; that the guaranty was a separate contract; that there was no stamp attached: therefore the contract could not be enforced. The contention of the plaintiff was, however, that there were two contracts: one in which the plaintiff could be held as

· guarantor, and the other as indorser. The court held that the words created two contracts, and said:

"In this case, the defendant is charged upon the contract of indorsement. In form it is ·absolute, dispensing with the usual demand and notice of nonpayment. It belongs to a class of indorsements known to the law [citing authorities]. The waiver of demand and notice therein contained does not deprive it of the character of an indorsement. It is proper to introduce terms of that kind into the instrument, and thus enlarge the responsibility of the indorser. It is, however, none the less an indorsement, and it must be so regarded, in considering the question 'whether it ought to be stamped, as such an instrument. * * * We are aware that many cases hold that, when the payee writes upon a note words of guaranty, he is not considered an indorser, but the contract is construed to be a guaranty. In these cases, however, words of indorsement were not used, and it does not appear that the payee intended, as in the case of the indorsement under consideration, to bind himself as indorser. * * * Another view is not unsupported by principle and reason. The writing in question has both words of guaranty and words of indorsement. The words therein considered separately will support a contract of either character. * * * If it be treated as an indorsement, a stamp is not necessary to its validity."

The court thereupon held that the demurrer to the answer setting up the want of stamp should have been sustained.

It is next contended that the consent to the extension of time or to renewal avoids the legal effect of the act of negotiation; but this. did not render the time of payment of the original note uncertain in the least. It was but a consent on the part of the indorser to be bound in the event that time should be given to the maker beyond the time fixed in the note. It did not change in the least the contract sued on as to the time when it should mature, or render that time uncertain.

It is next claimed that the plaintiff should have been held in the position of an assignee, because it had alleged in its petition that it took by assignment. The plaintiff set out in its petition the contract under which it took the instrument, and set out the writing as it appeared upon the back of the note.

3. BILLS AND
NOTES: negotiability and transfer: construction of pleading: legal effect.

The court was not bound by the bank's legal conclusion as to the effect of the words. The act did constitute an assignment, but more than an assignment. Defendant could not have been misled. The true meaning of the pleader is to be taken from a fair construction of the language employed. Our rules of pleading do not require the strict nicety of the common law. It would have made no difference what the plaintiff called the writing under which it took title. No matter what name plaintiff gave to it, it would be the same, and the legal effect the same. We see nothing in this contention.

It is next contended that the court failed to state the issues to the jury as presented by the defendant. The court properly construed the writing on the back of the note to constitute an indorsement, and so told the jury. The matter was before the court, and the court rightly resolved it for the jury. The legal effect of the writing is for the court, and not for the jury. This is elementary.

It is next contended that the court erred in striking defendant's amendment. There was no error in this. The amendment was presented simply as a foundation for the introduction of evidence which, if admissible at all, was admissible under the general issue. The ultimate fact tendered in the general issue was: Did the plaintiff obtain the notes in due course, before maturity, for a valuable consideration, without notice of the infirmities urged against them? Any fact which tended to negative any of these propositions would be competent evidence under the general issue, and required no pleadings to justify its admission. It appears that, some months before these notes were negotiated to plaintiff, the plaintiff had loaned the Mercantile Company $2,000, and took collateral security in the form of notes for the same. Defendant tried to introduce in evidence the collateral agreement under which these notes were taken. The collateral agreement would in no way throw light upon the good faith of the plaintiff, or upon its knowledge of the infirmities in these notes. The only purpose it could serve was to lay the foundation for an argument that, if the plaintiff lost in this suit, it could fall back upon the collateral. Whether it could or not did not affect its right to maintain the suit upon these notes, and to recover if

4. PLEADING: redundant matter.

it purchased them in due course, without knowledge of the infirmities now charged against them.

It is next contended that the court erred in permitting testimony as to the contents of certain letters. It appears that one witness, testifying for the plaintiff, said that the Mercantile Company and its agents were recommended to the bank as good, reliable people; that these recommendations were in writing; that the writings were not in the possession of the plaintiff, or their whereabouts known. The only material question was the good faith of the plaintiff. The purpose of these recommendations was to show that the plaintiff had no reason for believing that any crooked work was being done by the Mercantile Company or its agents; that it had reason to believe that they were fair-minded and well-meaning people. The contents of the letters added nothing to this. The letters are not before us. The plaintiff was permitted to testify that it acted in good faith, without notice of the manner in which the notes were acquired, and that it believed that the parties with whom they were dealing were reliable and responsible; and this is not complained of. The letters would have added no more to this proof. It was purely a collateral matter, and the exact wording of the letters is not material to a proper understanding of their import. We think there was no error in this respect by the court.

It is further contended that the court restricted the cross-examination of certain witnesses; that the defendant should have been permitted to go into the whole dealing from the beginning, between plaintiff and the Mercantile Company. This was largely in the discretion of the trial court. An examination of this record satisfies us that the court gave to the defendant all the latitude that he could reasonably demand in the investigation. The burden of proof was on the plaintiff to establish that it took the notes in good faith, before maturity, and without notice of these infirmities.

We are not disposed to interfere with the verdict of the jury upon this question. We find no reversible error in the case, and the judgment is affirmed.—*Affirmed.*