George BLOW, Executor, et al., Appellants,

v.

H. Max AMMERMAN, Appellee.

George BLOW, Executor, et al., Appellants,

v.

A. L. WHEELER, Appellee.

Nos. 18947, 18948.

United States Court of Appeals District of Columbia Circuit.

Submitted May 3, 1965.

Decided July 13, 1965.

Petition for Rehearing Denied Oct. 13, 1965.

Messrs. Samuel Scrivener, Jr., and David S. Scrivener, Washington, D. C., submitted on the brief for appellants.

Mr. H. Max Ammerman, Washington, D. C., submitted on the brief for appellees.

Mr. Jo V. Morgan, Jr., Washington, D. C., entered an appearance for Johann von Liedersdorff.

Before PRETTYMAN, Senior Circuit Judge, and FAHY and LEVENTHAL, Circuit Judges.

PER CURIAM:

Mary Kuhn, for whom appellants were substituted in the District Court after her death, gave two notes of $25,000 each to Baron Johann von Liedersdorff on April 25, 1963. Two paintings were the consideration for the notes. The day following its issuance note 1 was transferred by the Baron to the Pinnacle Investment Corporation in part payment for certain realty and for cash. Pinnacle is wholly owned by appellee Wheeler. He took the note from Pinnacle in exchange for one of his own of $24,000 on October 24, 1963, the day before it was due. Appellee Ammerman acquired note 2 directly from the Baron.

Mrs. Kuhn was sued on the notes by Wheeler and Ammerman after nonpayment on their due dates. It was claimed in defense that the paintings are fraudulent. The trial court gave summary judgments in favor of appellees.[1]

■ 1. *No. 18948.* We are satisfied that on the basis of the record before the District Court Pinnacle was shown to be a holder in due course and that no genuine issue of material fact appears in that regard. Accordingly, when

---

[1]. It does not appear that the issue of fraud or failure of consideration on the part of the Baron in the original transaction has been resolved on the cross-complaint of appellants against him and his wife. The trial judge expressly determined, however, that there was no just reason for delay, in conformity with Rule 54(b), Fed.R.Civ.P.

Wheeler took the note he met the requirements of D.C.Code § 28–408:

> a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.[2]

The rule would seem to apply even if Wheeler had actual knowledge of prior defenses. Cover v. Myers, 75 Md. 406, 23 A. 850. Nothing in the record suggests that Wheeler was a party to the original fraud, if such it was. We accordingly affirm the judgment in his favor.

2. *No. 18947.* As a result of separate transactions with the Baron after transfer to Pinnacle of note 1, Wheeler became aware "in June or July" that other paintings of the Baron's were not authentic. Wheeler thereafter arranged for Ammerman to take note 2 from the Baron. Ammerman required security from the Baron in the form of other paintings and took the note on June 22, 1963 at a $5,000 discount. It also appears that written on both notes was the consideration for which they were given, namely, two paintings by Monet and Renoir.

■ There is an issue of fact whether Ammerman when he took the note actually knew of (1) Wheeler's collateral dealings with the Baron and (2) Wheeler's conclusion "in June or July" that some of the paintings transferred by the Baron to him were frauds.[3] Bearing upon the issue is appellants' allegation that a close relationship existed between Wheeler and Ammerman. This and all the circumstances surrounding the negotiation and transfer of the note as they appear on the present record were sufficient to raise a jury issue as to bad faith on the part of Ammerman. See Commercial Trust Co. of New Jersey v. Kealey, 92 F.2d 397, 402 (4th Cir.).

■ Liberally construed, see Palmer v. Associates Discount Corp., 74 App.D.C. 386, 387, 124 F.2d 225, 226, appellants' pleadings and papers satisfy D.C.Code § 28–409 that "when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course." The burden of proof thus being on Ammerman and there being sufficient question as to possible bad faith, see Hazen v. Van Senden, 43 App.D.C. 161, 165, it was error to grant summary judgment in his favor.

3. We refer above, footnote 1, to appellants' cross-claim against the Baron. Should it be decided that there was an original failure of consideration for note 2 and that Ammerman was a holder in due course, there remains for decision whether the loss to the innocent Mrs. Kuhn, whose interests are now represented by appellants, could at least be reduced by either subtracting from the recovery of Ammerman the value of paintings he received as security from the Baron, or by requiring those paintings to be transferred to the estate of Mrs. Kuhn upon payment of Ammerman's judgment.[4] Accordingly, it would

---

2. Effective January 1, 1965, the Uniform Commercial Code replaced the Negotiable Instrument Act in the District of Columbia. D.C.Code, Title 28 (Supp. IV, 1965). Some of the sections of the 1961 D.C. Code herein cited have been repealed; others have been rearranged. The present transaction, of course, is covered by the 1961 Code.

3. Although not determinative, knowledge of collateral fraudulent transactions of a negotiator of a note is a circumstance bearing upon whether the particular note was taken in bad faith. Arnett v. Sanderson, 25 Ariz. 433, 218 P. 986; see D.C. Code § 28–406. And wilful ignorance of relevant known facts can be indicative of bad faith. Goodman v. Simonds, 20 How. 343, 61 U.S. 343, 367, 15 L.Ed. 934; Hazen v. Van Senden, 43 App.D.C. 161.

4. Cf. Van Winkle Gin & Machinery Co. v. Citizens' Bank of Buffalo, 89 Tex. 147, 33 S.W. 862.

appear that the cross-complaint should be consolidated for trial with Ammerman's case against the Kuhn estate.

No. 18948 is affirmed.

No. 18947 is reversed.