OPINION OF THE COURT
 

 Jasen, J.
 

 On these appeals, we are asked to decide whether summary judgment was properly granted to plaintiff bank as a holder in due course of certain promissory notes.
 

 Plaintiff is a bank which operates out of the Diamond Exchange in Ramat-Gan, Israel. Defendants are diamond merchants who have in the past engaged in numerous transactions involving the purchase and sale of diamonds. Rappaport and Fishman, doing business as Consolidated Jewelry Co. (Consolidated), and Rosen regularly purchased diamonds from Siegman and, as part of the transaction, executed promissory notes in his favor. Siegman, in turn, indorsed and delivered these notes, along with portions of
 
 *432
 
 his diamond inventory, to the Israel Discount Bank to help collateralize his existing debt and to secure additional loans.
 

 When the bank presented these notes for payment, they were dishonored. Thereupon, plaintiff commenced the underlying actions by moving, pursuant to CPLR 3213, for summary judgment in lieu of complaint. Defendants opposed the motion, contending that there had been a failure of consideration with respect to the underlying diamond transactions upon which the notes were predicated and that the bank was vulnerable to this defense because its knowledge of and participation in those transactions precluded it from asserting holder in due course status with respect to the notes.
 

 Supreme Court in the Rosen case denied plaintiff’s motion, holding that triable issues of fact exist with respect to the extent of the bank’s participation in the transactions and its understanding of the custom and usage of the instruments sued upon. Supreme Court in the Consolidated case, however, granted plaintiff’s motion, holding that “[njothing has been shown which would challenge plaintiff’s status as a holder in due course”.
 

 On appeal, the Appellate Division reversed in Rosen and affirmed in Consolidated, holding in both cases that its recent decision in
 
 First Int. Bank of Israel v Blankstein & Son
 
 (88 AD2d 501, affd 59 NY2d 436 [decided herewith]) was controlling. The Rosen appeal is before us as of right (CPLR 5601, subd [a]), while permission to appeal in Consolidated was granted by the Appellate Division.
 

 We are presented with a dramatically different situation by the instant appeals than that which we are called upon to address
 
 in First Int. Bank of Israel v Blankstein & Son (supra).
 
 The defendants here have demonstrated the existence of triable issues of fact by presenting proof in evidentiary and documentary form in support of their position. Accordingly, the orders of the Appellate Division should be reversed and the cases remitted for trial.
 
 [1]
 

 
 *433
 
 In order to assert holder in due course status, the purchaser of a negotiable instrument must take the instrument for value, in good faith and without notice of claims or defenses to it. (Uniform Commercial Code, § 3-302, subd [1].) The holder is deemed to have notice of a claim or defense if he has notice that “the obligation of any party is voidable in whole or in part”. (Uniform Commercial Code, § 3-304, subd [1], par [b].) As we more fully discuss in
 
 First Int. Bank of Israel v Blankstein & Son (supra),
 
 a note predicated upon an agreement which is rescindable at will is a voidable obligation. So, too, is a note predicated upon an executory agreement to which a defense has arisen. If the holder of such a note actually knows of the voidability of the underlying agreement at the time he takes the note, he cannot be a holder in due course.
 
 (Chemical Bank of Rochester v Haskell,
 
 51 NY2d 85, 92; Uniform Commercial Code, § 3-302, subd [1], par [c]; § 3-304, subd [1], par [b]; subd [4], par [b].) However, knowledge that the instrument was issued in return for a binding executory promise does not of itself give the purchaser notice of a defense or claim because the code does not require the holder to presume that a party will breach his promise and thereby give rise to a defense to performance. (Uniform Commercial Code, § 3-304, subd [4], par [b];
 
 First Int. Bank of Israel v Blankstein & Son,
 
 59 NY2d 436, 443,
 
 supra.)
 
 Only after a defense to the executory contract actually arises does the obligation predicated upon that contract become voidable.
 

 While plaintiff has demonstrated that it took the subject notes for value and in good faith, we believe the record before us discloses that triable issues of fact are raised in evidentiary form as to whether the notes are voidable obligations predicated upon agreements which were rescindable at will and whether the bank knew of the alleged voidability of the notes at the time it accepted
 
 *434
 
 them. The evidentiary facts alleged and the documentary evidence submitted by the defendants, if proven, would demonstrate that the bank knew the notes were voidable when it accepted them and, therefore, would be precluded from asserting holder in due course status.
 

 All of the defendants, purchasers and seller alike, submitted sworn affidavits asserting in evidentiary form that, as known to the plaintiff, any of the parties to the underlying diamond transactions could rescind the agreement for any reason without incurring liability. In the event that one of the parties exercised this unqualified right not to perform, the agreement and notes tendered pursuant thereto were to be considered nullities having no force or effect. These allegations, if proven, would establish that no binding obligation to perform ever arose and that the notes issued by Consolidated and Rosen to Siegman were rescindable at will and must be deemed voidable obligations, rather than instruments referable to binding executory contracts.
 
 (First Int. Bank of Israel v Blankstein & Son
 
 59 NY2d 436, 445,
 
 supra.)
 

 Further evidence of the voidable nature of these notes is found in the bank’s own invoices. According to the evidence submitted by defendants, Siegman would solicit diamond orders and deliver the diamonds requested to the Israel Discount Bank. The bank would then ship the diamonds to the purchaser along with an invoice, prepared by the bank on a form bearing the bank’s letterhead, detailing the size and quantity of diamonds delivered and a request for remittance of the amount due. The bank’s invoices contained the following statement:
 

 “IN CASE OF RETURN OR REFUSAL PLEASE RETURN PARCEL BY AIRFRIEGHT (Full value declared to airline) OR BRINKS COURIER SERVICE TO: ISRAEL DISCOUNT BANK LTD., DIAMOND EXCHANGE BRANCH, RAMAT-GAN, ISRAEL”.
 

 The express provision notifying Siegman’s customers that they could
 
 return or refuse
 
 the diamonds could be viewed by the trier of fact as evidence that Rosen and Consolidated had an unqualified right to reject the diamonds and refuse to perform the agreement, thus rendering the subject
 
 *435
 
 notes, which were predicated upon that agreement being performed, voidable obligations. Furthermore, by apparently acting as a middleman in these transactions and expressly notifying Rosen and Consolidated of their right to return or refuse the diamonds, the bank could be found to have had knowledge, at the time it took the notes, of their voidability.
 
 [2]
 

 We also note that Rosen submitted copies of credit memos which could be viewed by a trier of fact as indicating that it was not unusual for Rosen to return diamonds to Siegman via the bank and receive credit therefor. Such a view would bolster Rosen’s claim that he could reject any or all diamonds received for any reason whatsoever without incurring liability. Additionally, Consolidated submitted a consignment memorandum addressed to Leo Siegman. This document could be considered by a trier of fact to be further evidence that the subject diamond transactions were carried out pursuant to nonbinding consignment arrangements as opposed to binding executory contracts.
 

 Having demonstrated, by means of tender of evidentiary facts, that a plenary trial is required with respect to their allegations, defendants should be allowed to pursue further discovery and present their evidence to a trier of fact. (See
 
 Terranova v Emil,
 
 20 NY2d 493.)
 

 Inasmuch as these cases must be remitted for trial, we need not discuss defendants’ remaining contentions. Suffice it to say, those issues are fully explored in
 
 First Int. Bank of Israel v Blankstein & Son (supra)
 
 and the principles stated therein are equally applicable here.
 

 Accordingly, in each case, the order of the Appellate Division should be reversed, with costs, and plaintiff’s motion for summary judgment denied.
 

 Chief Judge Cooke and Judges Jones, Wachtler, Meyer and Simons concur.
 

 In each case: Order reversed, etc.
 

 [1]
 

 . Defendants contend that Israeli, rather than New York, law should be applied. We disagree. The businesses of Rosen and Consolidated are located in New York and
 
 *433
 
 plaintiff does business here through a wholly owned subsidiary, the Israel Discount Bank of New York. Furthermore, many of the underlying diamond transactions took place, at least in part, in New York, and some of the subject notes were made and dishonored here. We believe, therefore, that a sufficient relationship exists between the disputed transactions and this State to justify the application of New York law. (See Uniform Commercial Code, § 1-105, subd [1].) Moreover, this State has a strong interest in regulating commercial transactions which take place largely within its boundariés.
 
 (Intercontinental Planning v Daystrom, Inc.,
 
 24 NY2d 372, 385.)
 

 [2]
 

 . Inasmuch as the issue was neither briefed nor argued, we express no opinion as to the applicability of subdivision (2) of section 3-305 of the Uniform Commercial Code to the facts of this case.