743 F.2d 722
 39 UCC Rep.Serv. 916
 BARCLAYS DISCOUNT BANK LTD., Plaintiff/Appellee,
v.
Sam LEVY, individually and doing business as Sam's Gem
Trading, Defendant/Appellant.
ISRAEL DISCOUNT BANK LTD., Plaintiff/Appellee,
v.
Sam LEVY, individually and doing business as Sam's Gem
Trading, Defendant/Appellant.
BARCLAYS DISCOUNT BANK LTD., Plaintiff/Appellee,
v.
BOGHARIAN BROS., INC., Defendant/Appellant.
 Nos. 83-6229, 83-6230, 83-6235 and 83-6293.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 2, 1984.
Decided Sept. 25, 1984.
 
 Frederick L. McKnight, Jones, Day, Reavis & Pogue, Thomas Weiss, Pacht, Ross, Warne, Bernhard & Sears, Los Angeles, Cal., for defendant-appellant.
 Philip R. Homsey, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON and FERGUSON, Circuit Judges, and SOLOMON,* District Judge.
 FERGUSON, Circuit Judge:
 
 
 1
 This appeal involves actions (consolidated below) brought by two Israeli banks, Israel Discount Bank (IDB) and Barclays Discount Bank (Barclays), to collect on promissory notes made by two California diamond merchants, Sam Levy and Bogharian Bros., Inc. (Bogharian).[1] The district court, 568 F.Supp. 1116 (1983) granted the plaintiffs' motion for summary judgment, holding that under California law the plaintiffs were holders in due course, and rejecting the defenses offered by the defendants. The district court correctly chose to apply California law. However, we reverse because genuine and material questions of fact exist as to the banks' involvement in the shipment of the diamonds to the defendants and as to the plaintiffs' knowledge of the existence of a business custom regarding rescission of diamond sales.
 
 FACTS
 
 2
 Plaintiffs are two Israeli banks which hold promissory notes made by the defendants for the purchase of diamonds. The notes were made payable to the order of Leo Siegman, an Israeli diamond dealer, who endorsed the checks to plaintiffs. Defendants refused to pay the notes upon their presentment in Los Angeles and these actions by the banks followed.
 
 
 3
 Leo Siegman is not a party to these actions. He is a diamond dealer who obtained multi-million-dollar loans from the plaintiff banks to finance his diamond business in Israel. The defendants, when they purchased diamonds from Siegman in Israel, issued the promissory notes at suit to Siegman. Siegman, in turn, endorsed the notes to the plaintiff banks, again in Israel. Although it is not clear precisely who was responsible for shipping the diamonds to the purchasers, the parties agree that under Israeli law only specified banks may export diamonds.
 
 
 4
 The defendants assert that a "custom" existed in the Israeli diamond trade allowing a return of purchased diamonds and giving a corresponding refund or discharge of the notes used to purchase the diamonds. Defendant Levy claims that he never received the diamonds for which the notes were given, and Bogharian claims that it returned most of the diamonds it received to Siegman and paid for the rest. Pursuant to the alleged "custom," Levy's notes should have been discharged along with Bogharian's to the extent of the value of the diamonds returned.
 
 
 5
 The district court concluded that the evidence indicated that the defendants and Siegman knew of this practice, but the evidence was not sufficient to show that the banks had knowledge of it. It held that the plaintiffs were holders in due course, finding insufficient evidence to support the allegations that the banks had notice of the voidable nature of the underlying contracts, of possible defenses to payment, or of partial or total discharge. The district court granted plaintiffs summary judgment and awarded attorney's fees against Bogharian pursuant to the terms of its note.
 
 
 6
 Bogharian moved for reconsideration before the district court, relying on "new evidence," a "hetter isske,"[2] and claiming that the plaintiffs had violated Israeli banking law. The district court denied the motion for reconsideration, characterizing the "hetter isske" issue as "an entirely novel theory not heretofore advanced and in contradiction to defendants' theory regarding the relationship between plaintiff and Siegman ...," and dismissing the alleged violation of Israeli banking law as being irrelevant.
 
 STANDARD OF REVIEW
 
 7
 The district court's jurisdiction was based on diversity of citizenship, 28 U.S.C. Sec. 1332(a)(2). Because no federal law is involved, the controlling law is the law of the forum. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This circuit reviews the district court's interpretation of state law de novo. Churchill v. F/V Fjord, 739 F.2d 1395, 1397-1398 (9th Cir.1984) (en banc). On appeal of summary judgment, questions of fact are reviewed to determine whether a genuine issue of material fact exists. Ferguson v. Flying Tiger Line, Inc., 688 F.2d 1320, 1322 (9th Cir.1982). All factual disputes revealed by the record must be resolved in favor of the appellants. Id.
 
 DISCUSSION
 
 8
 1. Did the District Court Err in Choosing California Law to Determine Whether Plaintiffs are Holders in Due Course and Entitled to Payment?
 
 
 9
 The transaction at issue touched more than one state (California and Israel), so the forum's choice of law principles must be used to ascertain the proper law to be applied. Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). As this action was brought in the Central District of California, California choice of law rules apply.
 
 
 10
 The district court referred to section 1105(1) of the California Commercial Code to guide its choice of law. That section, enacted in 1963, provides that, in the absence of an agreement on choice of law, "this code applies to transactions bearing an appropriate relation to this state." According to California Code comment 1 to section 1105(1), its "net effect is to make the Commercial Code enforceable in many situations where under previous California law the local law would not have applied." Furthermore, it was recognized that this section would prevent the "parcelling out of a commercial transaction" among the laws of the states of execution and performance. Id. comment 4. See also U.C.C. Sec. 1-105 comment 3. Under this section, the law of California was properly applied by the district court to all phases of the transaction at issue--including the plaintiffs' status as holders in due course. Accord Israel Discount Bank, Ltd. v. Rosen, 59 N.Y.2d 428, 465 N.Y.S.2d 885, 887 n. 1, 452 N.E.2d 1213, 1215 n. 1 (1983).
 
 
 11
 The defendants argue on appeal that despite section 1105(1), the court should have referred to section 216 of the Restatement (Second) of Conflict of Laws (1971), which directs a court to apply the law of the state in which a negotiable instrument was transferred to determine (1) title and (2) holder in due course status. Several courts have applied this approach and have "parcelled out" the transaction between the place of transfer and the place of collection. See United States v. Guaranty Trust Co., 293 U.S. 340, 347, 55 S.Ct. 221, 224, 79 L.Ed. 415 (1934) (decided with reference to New York law); Olsen-Frankman Livestock Marketing Service, Inc. v. Citizens National Bank of Madelia, 605 F.2d 1082, 1085 (8th Cir.1979); Capital Investors Co. v. Estate of Morrison, 484 F.2d 1157, 1160 (4th Cir.1973); United Overseas Bank v. Veneers, Inc., 375 F.Supp. 596, 601 (D.Md.1974); Pintel v. K.N.H. Mohamed & Bros., 107 Cal.App.2d 328, 331, 237 P.2d 315 (1951). However, when there is a statute covering choice of law which is expected to change common law choice of law principles, see Cal.Com.Code Sec. 1105 comment 4, Restatement principles do not control. Restatement (Second) of Conflict of Laws Sec. 6(1) (1971).[3] Cf. American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1142 (9th Cir.1982) (absent state law, court refers to Restatement).
 
 
 12
 The district court reviewed the facts of this case and concluded that the transaction bore an "appropriate relation" to California. The facts include that the makers are California residents, that the place of payment and dishonor is California, and that the notes are payable in United States currency. The district court did not err in choosing to apply California law to this action.
 
 2. Holder in Due Course Status
 
 13
 Under California law, a holder of a negotiable instrument such as a promissory note is entitled to recover on the note unless the defendant establishes a defense. Cal.Com.Code Sec. 3307(2). The holder can cut off all personal defenses if it can show that it took the note for value, in good faith, and "[w]ithout notice that it ... has been dishonored or of any defenses against or claim to it on the part of any person." Id. Sec. 3302(1). However, holder in due course status does not cut off defenses if the holder has dealt with the party asserting the defense. Id. Sec. 3305(2).
 
 
 14
 a. Have Plaintiffs Dealt With the Defendants?
 
 
 15
 Defendants argue that the banks are subject to their defenses because the banks were involved in the transactions on which the notes were based. Although the banks argue that this issue was not raised below, the record clearly presents it; and on review of summary judgment, we must resolve factual disputes in appellants' favor and apply the law de novo. See Telco Leasing, Inc. v. Transwestern Title Co., 630 F.2d 691, 693 (9th Cir.1980). The defendants introduced Bank of Israel Circular No. 223/07, which indicates that diamonds can only be exported from Israel through banks such as plaintiffs, which finance the diamond trade.
 
 
 16
 At oral argument the parties agreed that under Israeli law diamonds must be exported through the banks and that individuals cannot export them directly. In a footnote, the district court also acknowledged that the banks had a role in the diamond sale, stating that "Siegman endorsed the notes to plaintiffs; plaintiffs then would release diamonds (of such value as the banks deemed were [sic] sufficiently secured by the notes) for shipment to diamond merchants."
 
 
 17
 The exact role of the banks and their relationship to the transactions involving the notes at issue are not clear from the record. We find that this raises a crucial question of fact which must be resolved on remand. If the banks, in compliance with the circular and, apparently, with Israeli law, were responsible for releasing the diamonds and shipping them to the buyers of the diamonds (the makers of the notes), a question of fact exists as to whether the banks were involved in the transactions to such a degree that they cannot assert holder in due course status against these defendants. See A.C. Davenport & Son Co. v. United States, 538 F.Supp. 730, 736 (N.D.Ill.1982), aff'd, 703 F.2d 266 (7th Cir.1983); James Pair, Inc. v. Gentry, 134 Ga.App. 734, 215 S.E.2d 707, 708 (1975). Because we find a question of fact concerning whether the banks "dealt with" the defendants, we need not reach the question whether the banks acted in good faith in regard to the transactions at issue.
 
 
 18
 b. Did Plaintiffs Have Notice that the Underlying Contracts Were Voidable?
 
 
 19
 Similarly, questions exist as to whether the banks can claim holder in due course status in light of defendants' allegation that the banks knew that the underlying obligations were voidable. Section 3302(1)(c) of the California Commercial Code provides that in order for purchasers of notes to be holders in due course, they must take the notes "without notice ... of any defense." Section 3304(1)(b) provides that purchasers of a note have notice of a claim or defense if they have notice that the obligation "is voidable in whole or in part." The district court found that although the defendants had adduced evidence demonstrating that they and Siegman knew of the voidable nature of the notes, there was no evidence indicating that the banks knew that the notes were voidable.
 
 
 20
 Defendants alleged a general custom in the Israeli diamond trade whereby diamonds were returnable. The banks filed affidavits by their employees denying knowledge of the custom with the banks' motions for summary judgment. In response, the defendants and Siegman gave affidavits to the effect that the custom existed and the banks were aware of it. Given such a sharp factual dispute, more evidence on the question is necessary before judgment can be entered. See Fed.R.Civ.P. 56(e). Summary judgment is only proper when the facts, viewed most favorably to the nonmovant, establish that there are no issues precluding judgment. See Malanca v. Falstaff Brewing Co., 694 F.2d 182, 184 (9th Cir.1982). In this case, the parties agreed that only local Israeli banks had authority to export and import diamonds. Resolving factual disputes in the defendants' favor, if in fact a practice existed by which returns were common, it is unlikely that such a practice could exist without the banks' knowledge. Cf. Israel Discount Bank, Ltd. v. Rosen, 59 N.Y.2d at 434-35, 465 N.Y.S.2d at 888, 452 N.E.2d at 1216 (bank invoice, providing for possible return of the diamond shipment to the bank, raised a question of fact regarding the bank's knowledge of the voidability of the sale and accompanying notes).
 
 
 21
 c. Did Plaintiffs Have Notice that Bogharian's Note Had Been Partially Discharged?
 
 
 22
 Even if defendants' arguments that the notes were voidable is rejected, partial discharge may be a defense if in fact Barclays received the diamonds Bogharian claims it returned to Siegman at the bank's address. Section 3603(1) of the California Commercial Code provides that a "party is discharged to the extent of his payment or satisfaction to the holder."
 
 
 23
 Bogharian argues that diamonds worth $76,832.50 were shipped to Siegman via Barclays on October 5 (after the purchase of the notes by the bank), and should have reduced the amount owed on the note. The record indicates that the bank credited Siegman's account for $77,000 the same day. The bank's role as an exclusive export-import agent and its purported knowledge of the return policy alleged by the defendants are relevant to whether this return should have constituted a partial discharge of the notes. If the return occurred after the bank purchased Bogharian's note and the diamonds were sent to Bogharian in care of the bank, it is possible that the bank had notice that the diamonds were sent to discharge a note it held. Additionally, there appears to be a dispute regarding the bank's method of handling diamond returns. Maurice Hassid, a Barclays employee, stated by affidavit that if Barclays received return merchandise from Bogharian's shipment, it "would have promptly been credited against the note in question in the ordinary course of business." Bank of Israel Circular No. 223/07 also raises more questions that it settles regarding Israeli return and credit policy. Thus, whether Siegman's account with Barclays or the specific notes issued for the diamonds would be credited upon a return of the diamonds to Barclays is a factual matter requiring more evidence.
 
 
 24
 d. Did Plaintiffs Know of Defenses to the Executory Contracts for Which the Notes Were Given?
 
 
 25
 Defendants also argue that the banks knew that the underlying diamond sales agreements were executory. Section 3304(4)(b) of the California Commercial Code provides that knowledge that a note was issued or negotiated in return for an executory promise does not defeat holder in due course status unless the purchaser has notice that a defense or claim has arisen to the promise. The district court made specific factual findings as to the dates when the notes were purchased by the banks and when the defenses arose. The court erred, however, in failing to consider the effect of the requirement under Israeli law that only banks could export diamonds.
 
 
 26
 Levy, who is the maker of several of the notes at issue, contends that he never received any diamonds in return for the promissory notes. The district court found that Levy failed to allege that the banks had notice of this fact and that the evidence did not support an inference that they did. However, the role of Israeli diamond exchange banks as exclusive export agents creates a question of fact as to the banks' knowledge, either actual or constructive, of the failure to deliver the diamonds. A failure of consideration is a defense to the enforcement of a note, Cal.Com.Code Sec. 3306, and the failure of consideration in Levy's case arose prior to the transfer of the notes to the banks. Cf. Blow v. Ammerman, 350 F.2d 729 (D.C.Cir.1965) (underlying contract fraudulent). Because of their general role in the diamond export trade, the banks could be considered parties to the underlying sale and thus on notice of the failure of consideration.
 
 3. Defenses
 
 27
 If, on remand, the district court finds that the banks are not entitled to holder in due course protections because they "dealt with" the defendants or had notice of voidability or of defenses such as discharge, the district court must assess the validity of the defenses offered. These defenses to payments include partial discharge, see Cal.Com.Code Sec. 3601(2) (return of diamonds to bank by Bogharian), and failure of consideration, see id. Sec. 3408 (failure to deliver diamonds to Levy).
 
 4. Miscellaneous
 
 28
 Defendants also argue that the banks wrongfully impaired the collateral of Siegman to their detriment, that the banks violated the Sherman Act, and that the banks acted illegally under Israeli law. We do not reach those issues as we reverse and remand this case to the district court to take more evidence on the enforceability of the notes under the California law on negotiable instruments.
 
 CONCLUSION
 
 29
 Summary judgment in favor of the plaintiff banks is REVERSED and this case is REMANDED for further fact finding.
 
 
 
 *
 Hon. Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 A third defendant below, Oryoun Jewelry Imports, has not appealed
 
 
 [2]
 A "hetter isske" appears to be a religious document purporting to characterize the bank and those to whom the bank charges interest as a "venture" to avoid violation of religious law
 
 
 [3]
 Section 6(1) of the Restatement (Second) of Conflict of Laws reads: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."