**Jurandi CARADOR, Plaintiff,**

v.

**SANA TRAVEL SERVICE, LTD. and Attaullah Paracha, Defendants.**

**No. 85 Civ. 6799 (MBM).**

United States District Court,
S.D. New York.

Dec. 6, 1988.

John W. Dougherty, New York City, for plaintiff.

Richard E. Bauman, New York City, for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Jurandi Carador, a Brazilian citizen, moves for summary judgment of the second claim of his diversity commercial paper and negligence action, and defendants Sana Travel Service, Ltd. (Sana), a New York corporation and Attaullah Paracha (Paracha), a New York citizen, move for summary judgment of the entire complaint. Fed.R.Civ.P. 56. For the reasons set forth below, summary judgment for plaintiff is granted against both defendants on the commercial paper claim, and the remainder of the action is dismissed.

On March 2, 1983, defendant Paracha, an officer and director of defendant Sana, drew a check on Sana's account at the National Bank of Pakistan (NBP) for $33,-000.00, made payable to Jamil Ahmed Kahn (Kahn), Al–Bark Turismo (Al–Bark). Paracha signed the check without indicating his relationship to Sana, and he inserted the words "JUST TO HOLD FOR THE SECURITY OF FUTURE BUSINESS," on the line that usually holds memoranda.

Paracha then sent the check to Al–Bark's offices in Brazil, where on March 17, 1983,

at the direction of Al–Bark's owner, Kahn endorsed the check in blank and sold it to plaintiff Carador for cash. Carador then sought to collect on the check by giving it to a firm specializing in foreign currency exchange, which then turned it over to a bank in the United States for collection. When NBP received the check on August 15, 1983, it telephoned Sana, who directed that the check be dishonored. After Carador noted defendants' dishonor and demanded payment on October 20, 1983, this action ensued.

In his second amended complaint, Carador seeks to collect $33,000.00, plus interest, alleging that defendants are liable to him as a holder in due course. Alternatively, Carador claims that Sana is liable for negligently writing the check, and Paracha is liable for aiding and abetting Sana. Carador moves for summary judgment of his negotiable instrument claim against Paracha, alleging that as a matter of law he may collect the entire amount from Paracha, plus interest from the date payment was demanded. In response, defendants move for summary judgment of the entire action, alleging that, as a matter of law, Carador cannot recover under the theories articulated in his complaint.

Under Fed.R.Civ.P. 56(c), summary judgment is proper if the evidence offered demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d 202 (1986). However, the burden rests on the moving party to demonstrate the lack of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the record "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*), *cited in Sterling Nat'l Bank and Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 875 (2d Cir.1975). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Diebold*, 369 U.S. at 655, 82 S.Ct. at 994, *cited in Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Donahue*, 834 F.2d at 57, *citing Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313 (2d Cir.1981). Additionally, when there is no genuine issue of material fact, summary judgment may be granted against a moving party, especially when there is no indication that such a result will prejudice the movant impermissibly. *Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.) *cert. denied*, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970). 6 Moore, Taggart, Wicker, Moore's Federal Practice ¶ 56.12 (2d ed. 1988).

The parties do not dispute that checks usually are negotiable instruments. N.Y. U.C.C. § 3–104 (McKinney 1964). However, defendants contend that the notation Paracha wrote on the front of the check destroys its negotiability. Defendants note that a negotiable instrument must be "an *unconditional* promise or order to pay ... [containing] *no other* promise, order, obligation or power ... except as authorized by this Article." N.Y.U.C.C. § 3–104(1)(b) (McKinney 1964) (emphasis added). Defendants contend that the notation makes the check a conditional promise to pay because it makes the check subject to, or governed by, another agreement. N.Y.U.C.C. § 3–105(2)(a) (McKinney 1964). Alternatively, defendants assert that the notation is so irregular that a reasonably prudent person would be put on notice of the check's restricted purpose, and through reasonable inquiry would discover that the check is not negotiable. In contrast, Carador asserts that the check is negotiable because the notation, on its face, merely indicates that $33,000.00 was conveyed from defendants to Al–Bark as security for performance of a contract.

■ A check is not a negotiable instrument if the drawer writes on it a promise, order, obligation or power, which, when examined on its face, in any way limits the

drafter's unconditional promise to pay. N.Y.U.C.C. § 3–104(1)(b) (McKinney 1964); *see Enoch v. Brandon,* 249 N.Y. 263, 267–69, 164 N.E. 45, 47 (1928) (interpreting the predecessor to N.Y.U.C.C. § 3–104(1)); N.Y.U.C.C. §§ 3–105 Official Comment 8, 3–119 Official Comment 5 (McKinney 1964). By contrast, a check which notes that it is a security deposit for future performance of another contract remains negotiable because such a notation does not suggest on its face that the drafter may have reneged on the unconditional promise to honor the instrument. *Israel Discount Bank, Ltd. v. Rosen,* 59 N.Y.2d 428, 433, 465 N.Y.S.2d 885, 887, 452 N.E.2d 1213, 1215 (1983) *citing First Int'l Bank of Isr. v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 443, 465 N.Y.S.2d 888, 891, 452 N.E.2d 1216, 1219 (1983); N.Y.U.C.C. §§ 3–105(1) & Official Comment 8, 3–112(1)(b) (McKinney 1964); *see Continental Casualty Co. v. Aetna Casualty & Surety Co.,* 251 A.D. 467, 296 N.Y.S. 833 (N.Y.App.Div.1937). Therefore, the notation on this check does not destroy negotiability because it merely indicates that Al–Bark and Sana have agreed that Sana will give Al–Bark a security deposit to insure future performance of another contract. As a corollary, the check is not so irregular as to put Carador on notice that the check is allegedly not negotiable, or even to require further inquiry into the underlying transaction. Moreover, contrary to defendants' assertion, the notation certainly does not put Carador on notice that the check was never meant to be negotiated. *See Helman v. Dixon,* 71 Misc.2d 1057, 1058–59, 338 N.Y.S.2d 139, 141–42 (N.Y.City Civ.Ct.1972).

■ Not only is the check negotiable, but Carador takes it as a holder in due course. A holder in due course is a holder who takes an instrument for value, in good faith, and without notice that it is overdue, or has been dishonored, or that any defense or claim to it exists. N.Y.U.C.C. § 3–302(1) (McKinney 1964). Indisputably, Carador holds the check for value. N.Y.U.C.C. §§ 1–201(20), 3–303 (McKinney 1964 & Supp.1988). Moreover, as a buyer without actual notice of any irregularity, Carador has taken in good faith without notice that

the check is overdue, has been dishonored, or that any defense or claim to it exists. *Chemical Bank of Rochester v. Haskell,* 51 N.Y.2d 85, 92, 432 N.Y.S.2d 478, 480–81, 411 N.E.2d 1339, 1341–42 (1980); *see Gerseta Corp. v. Wessex–Campbell Silk Co.,* 3 F.2d 236 (2d Cir.1924) (interpreting predecessor statute); *Manufacturers & Traders Trust Co. v. Sapowitch,* 296 N.Y. 226, 229, 72 N.E.2d 166, 168 (1947) (same); N.Y.U.C.C. § 3–304 Official Comment 2 (McKinney 1964). Nor does the notation on the face of the check, which refers to another contract, put Carador on notice to make further inquiry. *Rosen,* 59 N.Y.2d at 433, 465 N.Y.S.2d at 887, 452 N.E.2d at 1215, *citing L. Blankstein & Son, Inc.,* 59 N.Y.2d at 443, 465 N.Y.S.2d at 891, 452 N.E.2d at 1219; N.Y.U.C.C. § 3–304(4)(b) (McKinney 1964).

As a holder in due course, Carador takes the instrument free of all of the drawer's defenses to payment, with the exception of personal defenses, none of which are applicable. N.Y.U.C.C. § 3–305(2) (McKinney 1964). For example, Carador is entitled to payment even though defendants claim that the check was not given to Al–Bark for valid consideration. *Rosen,* 59 N.Y.2d at 445–46, 465 N.Y.S.2d at 892–93, 452 N.E.2d at 1220–21; N.Y.U.C.C. § 3–307(3) (McKinney 1964). In addition, defendants have not adduced any relevant evidence to establish a personal defense such as illegality, beyond mere *ipse dixit.*

■ Carador has not lost his status as a holder in due course through delay in attempting to negotiate the check. Holders in due course are given a reasonable time to collect their checks. N.Y.U.C.C. § 3–503(1) (McKinney 1964). A reasonable time for presentment is determined, among other ways, by the nature of the instrument and the facts of the particular case. N.Y.U.C.C. § 3–503(2) (McKinney 1964). Normally, a holder in due course is presumed to need only 30 days from the date of the issuance of the check in which to present a negotiable instrument for payment. N.Y.U.C.C. § 3–503(2) (McKinney 1964); *see* N.Y.U.C.C. § 3–304(3)(c) (McKinney 1964) (notice of a defense to payment presumed when holder takes checks over 30 days old). However, that is only a pre-

sumption, and in cases where the check is sent overseas, that presumption may be rebutted. N.Y.U.C.C. §§ 3–503(2) Practice Commentary; 3–304(3)(c) Practice Commentary (McKinney 1964). In this case, a non-certified check was mailed by a small company in the United States to a small company in Brazil, where it was then sold to a small check broker, who then gave it to a large broker for collection, who then gave it to a bank, which then tried to collect. Given these facts, it does not seem unreasonable for an uncertified check to make its way over two continents and through these five organizations in five months.

Moreover, defendants' delay in honoring the check entitles Carador to prejudgment interest from the date that he demanded payment from defendants, October 20, 1983, at the rate of 9% per annum. *Leumi Fin. Corp. v. Richter*, 24 A.D.2d 855, 264 N.Y.S.2d 707 (N.Y.App.Div.1965), *aff'd*, 17 N.Y.2d 166, 269 N.Y.S.2d 409, 216 N.E.2d 579 (1966); N.Y.U.C.C. § 3–122(4)(a) (McKinney 1964); N.Y.Civ.Prac.L. & R. 5001, 5004 (McKinney 1963 & Supp.1988). Therefore, Carador will be permitted to collect the face amount of the check, $33,-000.00, plus all applicable interest.

■ Sana admits issuing the check that Carador holds as a holder in due course. Moreover, Sana has not introduced evidence of a personal defense to liability, other than its bald assertion of illegality. Therefore, Sana is liable to Carador for the entire principal, plus all applicable interest. N.Y.U.C.C. § 3–401 (McKinney 1964).

■ In determining Paracha's liability to Carador, the relevant inquiry is limited to whether the face of the instrument puts Carador on notice that Paracha signed in his representative capacity only. *Rotuba Extruders, Inc. v. Ceppos*, 46 N.Y.2d 223, 413 N.Y.S.2d 141, 385 N.E.2d 1068 (1978). The inquiry is so limited because there is no evidence that Carador took with the knowledge or understanding that Paracha signed in any capacity other than an individual one. *Ceppos*, 46 N.Y.2d at 228–29, 413 N.Y.S.2d at 143–44, 385 N.E.2d at 1070–71; *Tropical Ornamentals, Inc. v. Visconti*, 115 A.D.2d 537, 495 N.Y.S.2d 729 (N.Y.App.Div.1985). Moreover, because

the face of the check did not put Carador on notice that Paracha signed in any capacity other than a personal one, Paracha is liable to Carador for the check, plus all applicable interest. *Ceppos*, 46 N.Y.2d at 228, 413 N.Y.S.2d at 143, 385 N.E.2d at 1070; *Bankers Trust Co. v. Javeri*, 105 A.D.2d 638, 481 N.Y.S.2d 362 (N.Y.App.Div.1984); N.Y.U.C.C. § 3–403(2)(b) & Official Comment 3 (McKinney 1964). This is true even though the check also bears Sana's imprint. *Ceppos*, 46 N.Y.2d at 227, 413 N.Y.S.2d at 143, 385 N.E.2d at 1070 (signer liable on note despite company's name above his signature); *Visconti*, 115 A.D.2d at 538, 495 N.Y.S.2d at 730 (signer liable on check despite presence of company name on check).

As a consequence of finding both defendants liable to Carador for the entire amount that he seeks, $33,000.00 plus interest, Carador's negligence claim, even if successful, could afford him no additional relief. Therefore, the negligence claim against defendants will be dismissed.

SO ORDERED.