**UNION BANK OF INDIA, Plaintiff,**

v.

**SEVEN SEAS IMPORTS, INC., Defendant.**

**No. 88 Civ. 7960 (PKL).**

United States District Court, S.D. New York.

Dec. 26, 1989.

Berger & Steingut (Michael L. Steindam, Harvey Weinig, of counsel), New York City, for plaintiff.

Gopaljee Jaiswal, Hempstead, N.Y., for defendant.

LEISURE, District Judge.

Plaintiff Union Bank of India ("Bank") brings this action for recovery on two unpaid drafts issued by plaintiff to Roha Engineering Private Ltd. ("Roha"). Roha transferred those drafts to defendant Seven Seas Imports, Inc. ("Seven Seas") who allegedly agreed to assume the obligation to plaintiff under the notes. Plaintiff now moves for summary judgment under Fed. R.Civ.P. 56 on the face of the drafts and of the documents showing defendant's assumption of those notes. Defendant asserts that there are material issues of fact to be tried, and also has cross moved for leave to file an amended answer, for an order compelling discovery production, for an order granting trial by jury, and for dismissal of the complaint pursuant to Fed. R.Civ.P. 12(b).

BACKGROUND

On August 23, 1984, Roha requested from the Bombay, India branch of the Bank an advance of 1,580,864.55 Indian Rupees. The advance, made in the form of $137,140.00 in United States currency, was secured by the proposed sale of goods by Roha to an American customer, Crossroads Import and Export Corp. of Ramsey, New Jersey ("Crossroads"). The goods to be sold by Roha were 450 bundles of "beater knives" made in India. Defendant's Exhibit B, p. 3. Beater knives are machinery parts for a paper mill. Affidavit of Kishor Gosalia, sworn to on July 21, 1989 ("Gosalia Aff.") ¶ 7. Upon receipt of the beater knives, Crossroads was to issue two drafts, one for $68,280.00 and the other for $68,-860.00, payable to the Bank within 120 days of their issuance. In essence, then, Crossroads was to pay for the Roha knives by repaying the Bank's loan to Roha. As security, Roha gave possession of the bill of lading and the insurance documents for the shipment of knives to the Bank. Affidavit of Navinchandra Pragji Desai, sworn to on September 6, 1989 ("Desai Aff.") ¶ 6.

These documents were, in turn, delivered to Bankers Trust Company in New York, the Bank's correspondent bank in the United States, for delivery to Crossroads upon delivery of their drafts. Desai Aff. ¶ 9.

On November 9, 1984, Bankers Trust informed the Bank that Crossroads had refused to accept the shipping documents and refused to pay the drafts. Defendant's Exhibit B, p. 11. Accordingly, the Bank attempted to determine from Roha the status of the drafts. Defendant's Exhibit B, p. 13. Roha responded on November 27, 1984, indicating that Seven Seas was the new drawee on the drafts and requesting that Bankers Trust present the drafts for payment through the National Bank of Georgia in Atlanta, Georgia. Defendant's Exhibit B, p. 16. Attached to the letter from Roha to the Bank were new invoices, indicating the sale of 450 bundles of beater knives to Seven Seas. Defendant's Exhibit B., pp. 17–18. A representative of Seven Seas signed two drafts payable to the Bank on December 11, 1984. Affidavit of Harvey Weinig, Esq., sworn to on July 7, 1989, Exhibits A, B. Payment was due on February 25, 1985, 75 days after the signing of the drafts.

Payment was not made on February 25, 1985. On March 20, 1985, Roha wrote to the Bank indicating that Seven Seas had requested an additional 90 days in which to perfect payment of the drafts. Defendant's Exhibit B, p. 30. Roha's letter appears to have been based on a letter to Roha from Seven Seas dated February 1, 1985, requesting the payment extension.[1] Defendant's Exhibit B, p. 31. Such an extension apparently requires the approval of the Indian Government. Such approval was received, and the due date on the drafts was extended by the Bank to May 25, 1985. On that date the drafts remained unpaid. Defendant's Exhibit B, p. 37. On June 28, 1985, Roha requested a second 90 day extension, again allegedly based on a similar request to Roha from Seven Seas. Defendant's Exhibit B, pp. 40–41. On July 10, 1985, the Bank rejected the request for

---

1. Plaintiff claims that this letter, and another allegedly from Seven Seas, are forgeries made by Roha. Affidavit of Kishor Gosalia, sworn to on July 21, 1989, ¶ 10.

the further extension. Defendant's Exhibit B, p. 42. Notices of dishonor were entered on the two drafts on January 28, 1986, and mailed to Seven Seas. The Bank has never been repaid on its advance to Roha. Desai Aff. ¶ 18.

DISCUSSION

Plaintiff has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendant has made a number of cross motions, including a motion to dismiss, a motion to amend the answer, a motion to compel discovery, a motion for a trial by jury.

A) *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... It is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court then must determine whether there does indeed exist a genuine issue as to any material fact: "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102 (2d Cir.1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R. Civ.P. 56(c)). *See also Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir.1989). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim. Rather, "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2552. The burden on the moving party will be "discharged by 'showing' —that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2553.

■ Indeed, once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511. Because the district court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," *id.*—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574,

586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." [2] *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), *citing Anderson, supra,* at 247–50, 106 S.Ct. at 2509–2511.

The issues before the Court are, first, whether plaintiff is a holder in due course of the drafts, and, if so, whether any of the four affirmative defenses raised by defendant to the action raise an issue of material fact for trial. The Court will first deal with the question of plaintiff's status as a holder of the drafts. This is an issue ripe for summary judgment, as it is one whose determination can be reached on the papers before the Court by applying the statute to the facts and documents as presented by the parties.[3]

Under New York law, "a holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against it or claim to it on the part of any person." N.Y. U.C.C. § 3–302(1). A payee may be a holder in due course. N.Y. U.C.C. § 3–302(2). Defendant has challenged plaintiff's status on the grounds that plaintiff did not, in fact, take the instrument for value, and did not take it in good faith.

Defendant's own documentary evidence belies its challenge that plaintiff did not take for value. Two balance sheets for Roha's account with plaintiff have been provided to defendant and, in turn, provided to the Court. The first, relied on by defendant to show that defendant did not take for value, shows a debit to Roha of the amount of the advance on September 4, 1985, well past the due date of the drafts. Defendant's Exhibit B, p. 48. Defendant asserts that this is evidence that the Bank did not give value for the drafts until well after it had taken possession of the drafts. But the balance sheet relied on by defendant is entitled "Statement of FBP Overdue Export Bills." *Id.* It is clear that this sheet indicates when the Bank finally gave up hope of collecting on the drafts from Seven Seas and charged Roha with the obligation to repay the advance directly. In fact, the second balance sheet indicates that the advance was credited to Roha's account on August 23, 1984. Defendant's Exhibit B, p. 49. That same balance sheet indicates the transfer of the advance to overdue status. *Id.*

Defendant also relies on a letter to Roha from Gagrat & Company dated September 26, 1987, outlining Roha's outstanding obligations to the Bank. Included in that let-

---

**2.** In an effort to resolve all ambiguities in favor of defendant in this motion, the Court has considered the amended answer included in defendant's motion papers as defendant's pleading.

**3.** Defendant challenges plaintiff's assertion that New York law applies to this case, claiming that Indian law or the law of Georgia would be more appropriate to this action. A federal court sitting in a diversity case must apply the choice of law rules of the state in which the action was brought. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Arkwright–Boston Manufacturers Mutual Ins. Co. v. Calvert Fire Ins. Co.,* 887 F.2d 437, 439 (2d Cir.1989). Accordingly, this Court applies New York choice of law analysis. In this case, N.Y. U.C.C. § 1–105 controls the choice of law decision. Under § 1–105, determination of the applicable law is a question for the Court. *Petrobras Comercio Internacional v. Intershoe,* 77

A.D.2d 546, 430 N.Y.S.2d 328 (App.Div.1980). Here the Court notes that the jurisdiction with the most contacts to the action is New York. Defendant agreed in New York to assume the drafts. All negotiations between Roha and defendant occurred in New York. Plaintiff's correspondent bank, to whom payment was to be made, was in New York. Defendant is a New York corporation with its principal place of business in New York. By contrast, defendant has no contact in this transaction with India. Defendant had no direct dealing with plaintiff, and defendant's only contacts with this transaction occurred in New York and, allegedly, in Georgia. The Court thus finds that New York law, not Indian or Georgian law, applies in this case. *See Israel Discount Bank Ltd. v. Rosen,* 59 N.Y.2d 428, 432 n. 1, 465 N.Y.S.2d 885, 887 n. 1, 452 N.E.2d 1213, 1215 n. 1 (1983).

ter is a description of the currency transaction now at issue. In that letter, Gagrat & Company, which appears to be the Bank's Indian counsel, indicated that upon receipt of the proposed bills from Roha on August 23, 1984, the Bank "advanced to you through your Cash Credit Account a sum of Rs. 1,580,864.55 being the rupee equivalent of the said two bills." Defendant's Exhibit B, p. 52. This letter simply confirms the information on the balance sheet that money was, in fact, transferred to Roha's account by the bank upon issuance of the drafts in August 1984. Thus, based on the facts and applicable law, the Court finds that the Bank did take for value.

Defendant next challenges the good faith of the Bank in taking the drafts. A party challenging the good faith and lack of notice of a holder bears a substantial burden. In order to defeat an assertion of good faith and lack of notice, defendant must establish a genuine defense which is supported by "material issues of fact ... which are 'genuine and based on proof, not shadowy and conclusory statements.'" *First International Bank v. L. Blankstein & Son*, 59 N.Y.2d 436, 445, 465 N.Y. S.2d 888, 892, 452 N.E.2d 1216 (1983), *quoting Hogan & Co. v. Saturn Management*, 78 A.D.2d 837, 433 N.Y.S.2d 168, 169 (1980).

Defendant claims that there are two separate reasons why the Court should not consider the Bank a good faith holder. First, defendant points to the letter from Gagrat & Company to Roha, as indicating that the Bank was aware at the time the drafts were issued that Roha was acting fraudulently in obtaining its foreign exchange advances. It is true that the letter from Gagrat indicates a litany of transactions where Roha has failed to meet its obligations. A close examination of the letter reveals, however, that as of December 11, 1984, the date the drafts were signed by Seven Seas, almost none of the transactions discussed in that letter had matured or were overdue. As of August 23, 1984, when the initial drafts were issued by the Bank to Roha, none of the transactions listed in the letter were overdue. Accordingly, that letter does not indi-

cate, as defendant claims it does, that at the time of the transactions at issue in this case, the Bank was aware of the untrustworthiness of Roha. In fact, the letter indicates that the Bank made a series of advances and loans to Roha after the date of Seven Seas' assumption of the drafts. It is incredible to believe, as defendant insists, that the Bank would continue to provide service to a customer it knew would not repay.

Defendant's second attack on the Bank's good faith is an assertion that the Bank knew that Crossroads' refused to pay the original drafts because Roha failed to deliver the goods promised. Defendant, however, presents no evidence to support this. Indeed, defendant's only evidence of the reason for Crossroads' refusal to honor the drafts is a hearsay statement that defendant has since learned of the allegedly insufficient shipment. Gosalia Aff. ¶ 3. Further, the documentary evidence submitted by defendant supports the Bank's position. The Bank expressed "surprise" when informed by Bankers Trust that the drafts had been returned unpaid. Defendant's Exhibit B, p. 12. Such an expression of surprise runs counter to any assertion that the Bank knew of Roha's dishonesty in general or in this specific transaction. Accordingly, the Court finds that the Bank took possession of the drafts in good faith and without notice. Further, since the Bank is a holder for value, in good faith and without notice, the Bank is a holder in due course of the drafts at issue.

Seven Seas also raises an affirmative defense to the drafts, claiming that Roha fraudulently induced Seven Seas to accept the drafts. Fraud can be a defense to a holder in due course, but only in very limited circumstances. In commercial law, there are considered to be two types of defenses to liability. The first are known as "personal defenses" which include lack of consideration, breach of warranty, and most forms of fraud. The second type of defenses are "real defenses," which are listed in N.Y.U.C.C. § 3–305(2), and include infancy, incapacity, and what is known as "fraud in the factum." Fraud in the fac-

tum, also known as fraud in the essence, is found when the maker is tricked into believing that which he is signing is something other than a promissory or obligatory note. N.Y.U.C.C. § 3–305(2), official comment ¶ 7. If defendant can state a real defense, plaintiff's status as a holder in due course will not provide protection.

■ Defendant, however, has not stated a real defense in this action. Defendant claims that he was tricked into signing the drafts by an officer of Roha. Gosalia Aff. ¶¶ 7–10. Nowhere, however, does defendant's officer claim that he was unaware that the documents he was accepting were other than drafts payable to Union Bank. Indeed, defendant's officer admits acceptance of the drafts, Gosalia Aff. ¶ 9, and admits knowledge that which he accepted were drafts due in 75 days. Gosalia Aff. ¶ 7. Defendant's officer does claim that Roha told him that Roha would arrange for payment of the drafts and that Seven Seas would not need to worry about repayment. Gosalia Aff. ¶¶ 7, 9, 12. This, however, creates a claim only for fraud in the inducement, not fraud in the factum. Fraud in the inducement is a personal defense and thus cannot be asserted against a holder in due course such as plaintiff in the case now before the Court. Defendant, by admitting knowledge of the nature of the documents signed and by admitting acceptance of those documents, has failed to make out a case for fraud in the factum. Accordingly, this fraud defense cannot be asserted against the Bank.[4]

■ Defendant has also interposed the defense of laches in its answer to plaintiff's claims.[5] "Historically laches developed as an equitable defense based on the maxim

*vigilantibus non dormientibus aequitas subvenit* (equity aids the vigilant, not those who sleep on their rights). In contrast to a statute of limitation that provides a time bar within which suit must be instituted, laches asks whether the plaintiff in asserting her rights was guilty of unreasonable delay that prejudiced the defendants." *Stone v. Williams*, 873 F.2d 620, 623 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989), *petition for rehearing denied* 891 F.2d 401 (2d Cir. 1989). A party asserting laches must show both an unreasonable delay on the part of the plaintiff in bringing the action, and, second, prejudice from the delay.

■ Plaintiff filed notices of dishonor on the two drafts on January 28, 1986, and did not file this action until November 9, 1988. The Court's inquiry here is into the reasonableness of the delay, rather than the number of years involved. *Id.* at 624. First, the Court notes that plaintiff was not sleeping on its rights during the entire period between the filing of the notices of dishonor and the filing of this action. Plaintiff made efforts to recover the money owed from Roha during 1987, as evidenced by the letter from Gagrat and Company to Roha dated September 26, 1987 demanding payment. Defendant's Exhibit B, pp. 51–53, 56. However, this is not sufficient to find that the delay was not unreasonable. The Court must look at delay in light of the prejudice to defendant. Here, prejudice to defendant would occur if, through its delay, plaintiff caused defendant to be without remedy against Roha for indemnification either based on contract or fraud.

Defendant vigorously asserts that its rights against Roha have been lost, and

4. Defendant also asserts that Roha and Union Bank conspired to defraud Seven Seas. Gosalia Aff. ¶ 8. Defendant provides no evidence, beyond this charge, unsupported even by hearsay, to back that claim. Accordingly, the Court cannot and will not entertain such an unsubstantiated charge.

5. Defendant, in its memorandum of law, also interposes a defense based on the statute of limitations, asserting that the Indian statute of limitations should apply in this action. The Court notes that defendant did not raise this

defense in its answer or amended answer, and as such, the Court could view it is as waived. The Court, however, has already determined that New York law applies to the case, and thus New York's six year statute of limitations on negotiable instrument actions applies. N.Y.Civ. Prac.L. & R. ("CPLR") 213. Since the earliest date on which this action could be said to accrue was August 23, 1984, plaintiff's action is well within that six year period. Accordingly, defendant's unpleaded defense of statute of limitations must fail.

points to Indian Limitation Act to support its assertion. In addition, defendant points to N.Y.U.C.C. § 3–601(1)(d) to show that plaintiff's case cannot be maintained, if, through its actions, plaintiff has caused the impairment of defendant's right or recourse. *See also* N.Y.U.C.C. § 3–606. Thus, the issue for the Court is whether, in fact, through its delay, plaintiff has caused defendant to lose its rights under the applicable statute of limitation. It is not before the Court whether jurisdiction could be gained over Roha in a court in the United States. However, if it could, it appears to the Court that New York law would apply to the transaction between Roha and defendant. Under New York law, the statute of limitations for a fraud action, which is the action apparently alleged by defendant, is six years. CPLR 213. Thus, under any calculation of the accrual of the action, a right would exist under New York law.

Similarly, if defendant could only bring an action in India, a question would remain whether Indian or New York law would apply.[6] Obviously, if New York law were applied, defendant's claims would still be viable. Defendant appears to assert, however, that Indian law would apply. For the purposes of this motion, the Court will accept that assertion. The question then arises whether an action for indemnity and/or fraud would survive under Indian statutes of limitation. It appears from the Court's analysis of the Indian Limitation Act that the statute has not run against Seven Seas in any action it might bring under Indian law. The action against Roha by Seven Seas would most likely be in the form of, or similar to, an indemnity action. It appears that under Indian law, like New York law, the statute of limitation for an indemnity-type action does not begin to run until the plaintiff in that action has paid out on the underlying debt. *See* Indian Limitation Act, Schedule of Period of Limitation, lines 41, 42 (1963). Such a payment cannot occur until after a final judgment

has been rendered by this Court in the action now before it. Additionally, the Court rejects defendant's assertion that its only action against Roha would lie under the drafts. Defendant also has an action in fraud. Such an action, apparently, does not accrue until the fraud has been discovered. According to defendant, the fraud was only recently discovered. Gosalia Aff. ¶ 10. Accordingly, an action for fraud would still have been available after plaintiff began this action.

The Court also notes that the exercise of its equitable powers may be particularly inappropriate in this case. Defendant knew of its debt on these drafts as of January 26, 1986, when the notices of dishonor were filed. Accordingly, as of that time defendant should have been aware of its need to protect itself from liability for the drafts. If, as defendant claims, it has a fraud claim against Roha, such a claim was available to defendant at least from the time it knew the drafts were owning against it. Apparently, however, defendant chose not to take action against Roha at that time and, indeed, to date has failed to take any action. Accordingly, the Court finds defendant's assertion of laches here somewhat self-serving. Defendant could have taken action against Roha sometime ago, well within any applicable statute of limitation, and failed to do so. In essence, then, defendant may also have slept on its rights. Thus, the Court finds that defendant's assertion of laches must fail as it had, and still has, recourse against the maker.

Finally, defendant asserts in its amended answer that plaintiff's notices of dishonor were not filed in a timely fashion. While this point is not pressed in defendant's papers in this motion, the Court notes that this defense must also fail. Defendant asserts that the notices were filed eleven months after the notes became due. Defendant ignores its own documentary evi-

---

**6.** The Court is of the opinion, given the facts now before it, that New York law would apply in action between Seven Seas and Roha. Seven Seas is a citizen of New York, and all transactions between the parties took place in New York, as did the discussions between the parties which contained the allegedly fraudulent statements. However, the Court does not pretend to know how an Indian court, applying its own choice of law rules, would decide this issue. Nor does the Court wish to suggest to an Indian court what its ruling should be.

dence. The due dates were extended by the Bank ninety days to May 25, 1985. Defendant's Exhibit B, p. 52. Further, plaintiff made numerous efforts during the period to obtain payment. Additionally, plaintiff instructed its correspondent bank on September 6, 1985, to "get both the bills noted and protested." Defendant's Exhibit b, p. 46. Thus, the Court cannot find the sort of delay that would result in the forfeiting of plaintiff's claims.

The Court thus finds that plaintiff is a holder in due course of the two drafts signed by defendant and that defendant lacks any real defenses which can be interposed against plaintiff. Accordingly, the Court must grant summary judgment for plaintiff pursuant to Fed.R.Civ.P. 56.

### B) *Defendant's Cross Motions*

Defendant has cross-moved to amend its answer, to compel discovery, for a trial by jury, and to dismiss the complaint. Based on the discussion above and the Court's entry of summary judgment for plaintiff, the Court finds all of the defendant's cross-motions, except the request to amend its answer, to be moot.

The Court is very liberal in allowing parties to amend their pleadings during the progression of a litigation. Fed.R.Civ.P. 15(a) allows a party to amend any pleading as a matter of right at any time before a responsive pleading is served, or by leave of the Court once a responsive pleading has been served. Rule 15(a) permits amendment after a "responsive pleading" has been served by leave of the Court. Therefore, leave of the Court is required for plaintiff to amend its answer.

■■■ Rule 15(a) "sets forth a policy in favor of granting leave to amend, stating that 'leave shall be freely given when justice so requires'." *Jaser v. New York Property Insurance Underwriting Association*, 815 F.2d 240, 243 (2d Cir.1987). A motion to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment, or resulting prejudice to the opposing party. *See, e.g.,*

*Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (*citing State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir.1986) (*quoting Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Absent a showing of bad faith or undue prejudice to the opposing party, mere delay alone will not suffice as a basis for the district court to deny the right to amend. *Richardson Greenshields Securities, supra*, 825 F.2d at 653 n. 6. Moreover, parties have been permitted to amend their pleadings to assert new claims long after they acquired facts necessary to support those claims. *See, e.g., Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y.1970) (plaintiff was aware of facts asserted in amended complaint from outset of case). In the present case, plaintiff will suffer no undue prejudice should this Court grant defendant leave to amend. Thus, particularly since the Court chose to use the amended answer as defendant's pleading for the purpose of this order and opinion, leave to file the amended answer presented to the Court is granted.

### CONCLUSION

Based on the foregoing discussion, plaintiff's motion for summary judgment is GRANTED.

Defendant's cross-motion to amend its answer is GRANTED. Defendant's other cross-motions are DENIED.

The judgment clerk is instructed to enter judgment for plaintiff in amount of $137,-140.00 plus interest from May 25, 1985.[7]

SO ORDERED.

---

7. The Court notes that the due dates on the notes were extended from February 25, 1985, to May 25, 1985. Accordingly, interest can only accumulate from the extended due date.